No. 31,743

T. F. McCLEERY et al. (W. R. HAZEN, Administrator), *Appellants*, v. THE McCLEERY LUMBER COMPANY et al., *Appellees.*

(33 P. 2d 1112.)

Opinion filed July 7, 1934.

*W. R. Hazen* and *James E. Larimer,* both of Topeka, for the appellants.
*Edwin A. Austin,* of Topeka, for appellee Silas Porter.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from an allowance of an item of

costs for the services of a lawyer who served as judge *pro tempore* by stipulation of the litigants.

The above-entitled cause has been the subject of protracted litigation. Prior to its fifth and last appearance in this court (*McCleery v. McCleery Lumber Co.*, 136 Kan. 484, 16 P. 2d 517), and during its pendency in the district court of Shawnee county, on May 19, 1930, the cause came on for consideration and disposition before the second division of that court, Hon. George H. Whitcomb, presiding judge, the parties being represented by counsel; and an agreement was made and incorporated in a journal entry, which in part reads:

"The case being called in open court for consideration, it was by all parties agreed that a prompt hearing and final disposition thereof should be had; it further appeared that by reason of the early necessary and extended absence of Judge Whitcomb from Shawnee county, he would be unable to hear and dispose of the case.

"In consideration whereof it was in open court by all the parties agreed that W. Glenn Hamilton, a member of the Topeka bar, should, with the consent of the parties, be selected as judge *pro tem.* to try, determine and dispose of all matters and questions of law or fact involved in this action, or that may hereafter arise therein, as fully as could the judge of this court.

"It was further agreed by the parties that said judge *pro tem.* should receive as full compensation for his services twenty-five dollars per day, or proportion thereof for a fractional day, for the time actually spent in the trial of said cause.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"It is further considered and ordered that the compensation of the judge *pro tem.* herein agreed upon and ordered shall be taxed as costs in this action and shall be paid on the final disposition of this case by the party or parties who shall by the judge *pro tem.* be. determined to be liable for the payment thereof."

The record does not show what progress was made in the litigation pursuant to the foregoing agreement as approved by the court; but about six months later, on November 28, 1930, the appellants filed objections to Hamilton continuing to serve as judge *pro tempore;* and appellants filed a motion to remove the cause to another county, or to call in a judge from another district, or to transfer the cause to another division of the Shawnee county district court. The objections to the further continuance of Hamilton's services as judge *pro tem.* were thus stated:

"1. While the manner of selecting the *pro tem.* judge was provided by law, the grounds on which the appointment was made and the reasons recited in the order providing for the appointment are not authorized by statute.

"2. The term of court at which said *pro tem.* judge was appointed and qualified has expired and the right to serve as such has thereby ceased to exist.

"3. The *pro tem.* judge appointed at the April term· of this court is disqualified to sit in the hearing and final disposition of the issues involved herein, on account of the grounds hereinafter set forth."

In this subdivision 3 there followed a printed pamphlet of twenty-one pages, verified, stating· the interests of the litigants, and giving the history and progress of the litigation, all of which had little bearing on Hamilton's alleged disqualifications; but on page 7 we note the following:

"What the ruling of the *pro tem.* judge would be is shown by the verbal and written statements unless he can be convinced to the contrary."

No action was taken on these objections and motion, but on December 6, 1930, entries on the judge's docket and the appearance docket were made in this cause, which read:

"All parties before the court agree that the jurisdiction of W. Glenn Hamilton to sit as judge *pro tem.* has terminated by reason of the expiration of the term of court at which he was appointed."

On April 30, 1931, at the April term of court, the cause came on again for hearing before the second division of the district court, Hon. George H. Whitcomb presiding. Judge Whitcomb announced his disinclination to sit in the cause and suggested that a judge *pro tem.* should be selected or elected. By agreement of all parties Hon. Silas Porter was selected to try the cause as judge *pro tem.* The pertinent facts were embodied in a court order, the journal entry of which, in part, reads:

"It is further agreed by said counsel representing all the parties to this action, subject to the approval of the court, that Hon. Silas Porter be selected as *pro tem.* judge herein, and that he be appointed and qualified as such judge *pro tem.* to hear, try, determine and dispose of any and all issues, matters or proceedings, now pending herein, or that may hereafter arise, of either law or fact, at this April term of the court, or at any subsequent term of the court, until all issues and matters in dispute, of either fact or law, are finally determined so far as the same can be in this court."

Pursuant to the foregoing the cause proceeded to hearing and judgment before Hon. Silas Porter as judge *pro tem.* His decision was in favor of defendants, and the judgment was affirmed by this court on December 10, 1932.

On February 10, 1933, Porter filed a motion for an order fixing the amount of his compensation for his services and time (15 days) necessarily consumed in hearing the evidence and in considering and

determining the findings, conclusions and judgment made and entered thereon.

At the hearing of this motion testimony was introduced showing the extent of the services and the value thereof. The trial court sustained the motion and allowed the sum of $450, which was ordered to be charged as costs in the action and to be collected as such.

Appellants moved to set aside this finding, order and judgment and to grant a new trial on two grounds:

"(1) That the district court had no jurisdiction to make such findings, decisions, order and judgment or any part thereof.

"(2) That the services of said *pro tem.* judge being rendered in the trial of a single action, there is no statutory authority or legal authority of any kind for the allowance and taxation of costs as a fee or compensation for the services of a *pro tem.* judge."

This motion was overruled, and the legal questions involved are now brought here for review.

Appellees have moved to dismiss on the ground that nothing but an item of costs is involved, and that this court is therefore without jurisdiction to consider it. (R. S. 60-3303.) If the matter of present concern was an ordinary item of costs, the trial court's ruling would not be subject to appellate review. (*Oswald v. Railway Co.*, 104 Kan. 281, 178 Pac. 621; *Vrooman Co. v. Summer*, 110 Kan. 662, 205 Pac. 609.) We think, however, that the allowance for the services of the judge *pro tem.* was not an ordinary item of costs chargeable to the losing litigant as a matter of course, nor yet altogether a discretionary matter vested in the trial court. Here the services which were performed by Porter were pursuant to an agreement of the parties. If his services had been strictly those of a referee it would, of course, have been both legal and proper to allow a fee and charge it as costs to the defeated litigants or apportion it as the trial court might direct. (R. S. 60-2928; 60-3706; *City of Emporia v. Whittlesey*, 20 Kan. 17.) But it has been held in a recent case that the legality of a certain extraordinary item charged as costs was subject to appellate review. (*Gants v. National Fire Ins. Co.*, 127 Kan. 251, 273 Pac. 406.)

In the case at bar it appears to us that the allowance to Porter for his services as judge *pro tem.* rests upon the agreement of the litigants which was fairly entered into, and approved by the court, on May 19, 1930. True, at that time the agreement to allow and

charge $25 per day for the services of a judge *pro tem.* to be taxed as costs and paid by the defeated litigants was made in contemplation that Hamilton would serve as judge *pro tem.* Later, appellants raised objections to Hamilton, as shown above, but they did not then raise any legal question as to the binding force of their agreement that the losing parties should pay compensation for the services of the judge *pro tem.* The expiration of the term during which Hamilton was chosen and expected to serve furnished a convenient opportunity to dispense with Hamilton's services, which had become a matter of primary concern to appellants; and thus Porter was chosen to serve in his stead. The fair implication deducible from all the circumstances is that so much of the agreement as bound the litigants that the losers should pay the compensation of the judge *pro tem.* was neither abrogated nor repudiated, but continued to bind the parties when they agreed upon the selection of Porter as judge *pro tem.* Indeed, we think it would be a gross injustice to hold otherwise. Here was a complicated and troublesome lawsuit, worn threadbare by a dozen years of litigious strife, and where the regular trial judge was sick and tired of it, and the case had already been back and forth four times to the supreme court. To ask an attorney to take a hold of such an interminable controversy and serve without compensation would naturally have been met with a flat refusal by any lawyer competent enough and patient enough to perform such an undesirable task. At all events, good faith would have required the litigants to forewarn him that their prior agreement, that the losers should pay for his services, had been abrogated, and that he would have to look to Santa Claus for his compensation.

Our attention is directed to the statute which was in force at the times Hamilton and Porter were successively agreed upon to serve and as it existed when Porter served in that capacity. Such a judge could lawfully be selected by the parties to a lawsuit or by their attorneys. (R. S. 20-306.) The statute made provision for the payment of a judge *pro tem.* where he was chosen by ballot of the members of the bar in attendance (R. S. 20-306), when the necessity therefor might arise (R. S. 20-305, 307), and when so chosen he would be authorized to try any and all cases triable at the term (R. S. 20-309). The provision for his compensation read:

"The judge selected *for the term* as herein provided shall receive as com-

pensation while actually holding court the sum of ten dollars per day to be paid by the county in which said term of court is held." (R. S. 20-309.)

The statute made no provision for payment of a judge *pro tem.* selected by the litigants or their attorneys to try a particular case. His services in such a situation—which is precisely the one of present concern—would not be a lawful charge upon the county treasury. So the question we have to decide reduces to the simple query as to the validity of an agreement of litigants to try their cause before a judge *pro tem.* of their own choosing, and that his per diem for such services should be charged as costs and paid by the losing party.

No rule of public policy is cited which was violated by such an agreement, and we can think of none.

The judgment is therefore affirmed.

HARVEY, J. (dissenting): Prior to the enactment of chapter 155, Laws 1911, our statute contained no provision for compensating a judge *pro tem.* Attorneys so selected performed the duties without compensation, just as now they defend one charged with crime without compensation if appointed to do so by the court. I regard it as being contrary to the public policy of this state for litigants to be charged with the services of a judge to try their case in the district court, and therefore question the validity of the agreement of May 18, 1930, by which Mr. Hamilton was to be paid $25 per day, to be taxed to the losing party. However, the validity of that agreement is not before us. Mr. Hamilton did not serve, and no question with respect to his compensation is presented. I think his appointment and the reasons why he did not serve have no place in this appeal. It is worthy of note that when the parties, on April 30, 1931, agreed upon the selection of Justice Porter as judge *pro tem.*, any provision regarding his compensation was omitted. There is no reason to think the parties did not do so intentionally. What reasons prompted them to omit it are not material.

I am inclined to the view that the construction in the opinion of R. S. 20-309, that the county shall pay $10 per day for the services of a judge *pro tem.* in the event only that he has been selected for the term as distinct from being selected by the parties, is more restricted than was contemplated by the legislature and understood by the bench and bar of the state, and that we would do no violence to the statute to hold that it applies to a judge *pro tem.* however

selected. But if this statute does not provide compensation for a judge *pro tem.* selected by the parties, it leaves him in the same situation as such party was in prior to the enactment of chapter 155, Laws 1911. We note the legislature, by chapter 168, Laws 1933, perhaps wisely, took out of the statute the provision for selecting a judge *pro tem.* by agreement of the parties.