No. 35,605

Myrtle Schoonover, *Appellee*, v. L. J. Clark and The National Mutual Casualty Company, *Appellants*.

(130 P. 2d 619)

Opinion filed November 7, 1942.

*C. E. Vance*, of Garden City, argued the cause, and *William Easton Hutchison*, *A. M. Fleming*, both of Garden City, and *W. C. Gould*, of Dodge City, were on the briefs for the appellants.

*Carl Van Riper* and *Russell L. Hazzard*, both of Dodge City, were on the briefs for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action for damages for injuries sustained in a collision in a Dodge City street between a panel truck in which plaintiff was riding and defendant's farm truck which was parked at the side of the street. The National Mutual Casualty Company was impleaded as defendant because it had executed to the owner of the farm truck the indemnifying insurance policy required by the statute to enable him to operate his truck as a licensed private carrier.

The pertinent facts were these: Defendant L. J. Clark resided in Toronto in Woodson county. He held a state license to operate his farm truck as a private carrier. On or about May 17, 1940, he loaded his truck with fence posts, intending to haul them to Greensburg and dispose of them at that point. Accompanied by his minor son and another boy, he set out for Greensburg, which is about 200 miles west of Toronto. At Haviland, about 18 miles east of Greensburg, he effected a sale and disposal of his fence posts.

Dodge City is about 68 miles west of Haviland, and a rodeo was being held there about that time. Defendant having no immediate trucking business in contemplation, determined to attend the Dodge City rodeo before returning to his home in Woodson county, so he and the two boys drove on through Greensburg to Dodge City, arriving there in the evening. He parked his truck on "Second street." It runs north and south; it is about 45 feet wide, and is part of the state and federal highways, Nos. 283 and 45. Defendant's truck was parked close to the east curb of the street, facing north, and was left there during the night without parking lights. There were street lamps of 100 candle power on both sides of the street. These were set on lamp posts 12 feet high and spaced 80 feet apart. But Dodge City had no ordinance excusing compliance with the statutory requirement that parked trucks must have lights. (G. S. 1941 Supp. 8-586.)

On the same night the plaintiff was the guest of one Bernard Shea, who took her in his employer's panel truck to a place called the Avalon club at some distance south of the Arkansas river which flows eastward through Dodge City. Shea had imbibed a few "jiggers" of whiskey that day and night, and between one and two o'clock a. m. he left the Avalon club to take plaintiff to her home in the city. The night was dark and very rainy; he drove at 25 miles per hour, at which rate he could have stopped his truck in 40 feet; he could have seen defendant's unlighted truck at 15 feet distance, but did not see it until about 5 feet from it. A collision resulted and plaintiff was severely injured.

Hence this lawsuit for damages which plaintiff instituted in Ford county.

Service of summons on defendant insurance carrier was made in Ford county, and the principal defendant, L. J. Clark, was served by process forwarded to the sheriff of Woodson county, where he resided. Defendant Clark by special appearance filed a motion to set aside the service of summons on the ground that the district court of Ford county had no jurisdiction of his person. The defendant casualty company filed a demurrer to plaintiff's petition on the ground that two causes of action had been improperly joined.

This motion and the demurrer were overruled and the defendants filed separate answers, to which the plaintiff filed replies, after which the cause was tried to a jury which answered certain special questions and returned a verdict in favor of plaintiff.

The usual post trial motions were filed and overruled and judgment was entered on the verdict.

Both defendants appeal, with the usual assignments of error, but the controlling question relates to the trial court's ruling that at the time and in the circumstances of the collision the defendant's truck was being incidentally used in his business as a licensed private carrier. If so, the insurance carrier was properly joined as a codefendant in the action. (G. S. 1935, 66-1,128; *Dunn v. Jones*, 143 Kan. 218, 53 P. 2d 918; *Twichell v. Hetzel*, 145 Kan. 139, 64 P. 2d 557; *Fisher v. Central Surety & Ins. Corp.*, 149 Kan. 38, 86 P. 2d 583.) On the other hand, if the principal defendant was not engaged directly or incidentally in the pursuit of his business as a licensed carrier, then under the terms of the policy issued by the defendant casualty company its liability was merely one of an indemnitor, and it could only be subjected to a judgment, if at all, when a judgment had been obtained against the principal defendant. (*Smith v. Republic Underwriters*, 152 Kan. 305, 308, 103 P. 2d 858; *Burks v. Aldridge*, 154 Kan. 731, 121 P. 2d 276; *Farm Bureau Mut. Automobile Ins. Co. v. Daniel*, 104 F. 2d 477; *Commercial Standard Ins. Co. v. Foster*, 31 F. Supp. 873; same case on appeal, 121 F. 2d. 117.) The insurance policy did contain a coverage provision relating to the use of defendant's truck for its "occasional use for personal pleasure, family and other purposes," but this feature is irrelevant in this appeal.

The trial court held as a matter of law that defendant's truck was being incidentally used in his business as a licensed private carrier at the time and place of the collision, and in consequence the defendant casualty company which had furnished his statutory bond could be impleaded and subjected to judgment in the first instance.

We agree with the trial court that since the evidence as to the purpose of defendant in driving his empty truck from Haviland to Dodge City was clear and undisputed, the question whether that purpose was incidentally related to his business as a private carrier was one of law. But we are unable to say that this question of law was correctly decided. To sustain that decision counsel for appellee argue that the trip from Haviland to Dodge City, a distance of some 50 miles beyond his originally planned destination, Greensburg, and some 68 miles beyond Haviland, where he disposed of his load of fence posts, was merely incidental to his planned trip as a private carrier from Toronto to Greensburg—that the journey in the empty truck to Dodge City to enable defendant and his two youthful com-

panions to attend the rodeo was merely an incidental deviation from his business trip as a trucker from Toronto to Haviland and Greensburg.

It seems to us that this contention is so transparently fallacious that it needs only to be stated to be condemned. We may grant that if the accident had occurred on an incidental deviation from the direct route from Toronto to Greensburg, as at Hutchinson where defendant did spend one night en route to his contemplated destination, the statutory liability which the insurance carrier had undertaken would bind the defendant. That was an incidental deviation. But in our view it completely overworks the expression "incidental deviation" to say that a journey of 50 or 60 miles beyond the destination of defendant's contemplated business trip was a mere incidental deviation, when that additional journey was undertaken for purely personal reasons in no way related to his business as a licensed carrier.

The result is that the defendant casualty company's contract obligation, if any, was one of indemnity and not one of primary liability. It was expressly stated in the conditions of the policy that—

"No action shall lie against the company . . . until the amount of the insured's obligation to pay shall have been finally determined . . . by judgment against the insured after actual trial, . . ."

It follows that the service of summons on the principal defendant in Woodson county on process issued by the district court of Ford county should have been quashed on defendant's timely motion to that effect. In *King v. Ingels*, 121 Kan. 790, 250 Pac. 306, it was said:

"It is elementary law that a plaintiff cannot ordinarily get an unwilling adversary into court without valid personal service upon him in the jurisdiction in which the action is begun, nor can he accomplish that end by joining as defendant some mere nominal party upon whom personal service can be had in that jurisdiction when the plaintiff has in fact no *bona fide* cause of action against the defendant so nominally joined. (Citations.)" (p. 792.)

This conclusion will necessitate that the judgment against both defendants be reversed, and the other errors raised by appellants require no attention. The cause is therefore remanded with instructions to set aside its judgment and to dismiss the action. It is so ordered.