No. 36,001

VIRGIL WAUGH, *Appellee* and *Cross-appellant*, v. KANSAS CITY PUBLIC SERVICE COMPANY, and N. LAYCOCK, *Appellants;* WESTERN CASUALTY & SURETY COMPANY of Fort Scott, *Appellee* and *Cross-appellant.*

(143 P. 2d 788)

Opinion filed December 11, 1943.

*Edward M. Boddington*, of Kansas City, argued the cause, and *Fred Robertson, J. O. Emerson,* both of Kansas City, and *Charles L. Carr,* of Kansas City, Mo., were on the briefs for the appellants.

*James K. Cubbison,* of Kansas City, argued the cause, and *Blake A. Williamson* and *Lee Vaughan,* both of Kansas City, were on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action for damages for injuries sustained shortly after midnight on November 16, 1941, in a collision between a tractor-trailer, hereinafter for purposes of brevity referred to as a truck, and a streetcar, at the intersection of Seventh street and Richmond avenue, in Kansas City, Kan.

The pertinent facts follow: Plaintiff Virgil Waugh resides near Edna, Kan., where he operates a farm, raises some cattle, and also engages in business as a trucker. He owns two trucks and holds a state license to operate as a contract motor carrier of property for hire with the additional privilege of operating as a private motor carrier of property within certain limitations set forth in such license. A few days prior to the time of the collision he had sold

some cattle at Edna, Kan., under an agreement whereby he was to deliver them to the purchaser at Atlantic, Iowa. A day or so prior to the date agreed upon for delivery he loaded such cattle into his truck and transported them to Atlantic where they were delivered to the purchaser. Thereafter, he bought a load of corn, loaded it on his truck, and left Atlantic about 5 or 6 o'clock in the afternoon of November 15, 1941, proceeding southwardly until he reached the point where the collision occurred.

Defendant, The Kansas City Public Service Company, is a corporation which operates a street railway system in Kansas City, Mo., and Kansas City, Kan. Its streetcar tracks extend in an easterly and westerly direction on Richmond avenue and cross the intersection referred to.

N. Laycock, another defendant, is a streetcar operator in the employ of the streetcar company and was the motorman in charge of the streetcar involved in the collision.

The defendant the Western Casualty & Surety Company of Fort Scott, Kan., hereinafter referred to as the insurance company, is engaged in an insurance business which includes the issuance of liability insurance policies covering the activities of both contract and private motor carriers of property for hire. It had executed to the owner of the truck a policy of insurance required by G. S. 1935, 66-1,128, to enable him to operate under his license and this policy was in full force and effect on the date of the accident. This defendant was brought into the action as a party on application of the defendants and order of the trial court.

Seventh street is a heavily traveled thoroughfare in the city of Kansas City, Kan., over which are routed two U. S. highways and one state highway. It is approximately fifty-two feet in width and is what is known as a "through street," there being no stop signs to stop north- and south-bound traffic, except where traffic lights are located. There was no traffic light at the intersection where the accident occurred. Richmond avenue intersects Seventh street at right angles in an easterly and westerly direction; it is approximately thirty-six feet in width and contains two sets of streetcar tracks. At the northeast corner of the intersection is located a traffic stop sign requiring west-bound streetcars and other traffic to stop before crossing Seventh street.

Immediately prior to the collision plaintiff approached this intersection from the north. His own admission was that when his truck

reached a point about eighty to ninety feet north of Richmond avenue, he observed the streetcar, moving in a westerly direction, approach the east side of Seventh street and stop for the purpose of allowing passengers to alight. He then saw it start up and proceed into the intersection. His claim, which was corroborated by some witnesses, was that after entering the intersection the streetcar stopped for the purpose of permitting north-bound automobiles to pass, whereupon he proceeded to attempt to pass and was struck by the streetcar at a point in the center or slightly west of the center line of the intersection of the two streets. Defendant Laycock's statement, which was also substantiated by the statement of other witnesses, was that he stopped the streetcar at the east side of the intersection, started it again and then proceeded into and across it without stopping thereafter until such car was hit on the north side of the front part thereof by the plaintiff's truck at a point west of the center line of such intersection. Other statements detailing facts and circumstances under which the collision occurred—many of which were in conflict—could be related but will not be referred to since they become inconsequential under the issues we believe to be determinative of this lawsuit. The important facts to keep in mind are that the streetcar had entered the intersection prior to the moment the truck entered it, and that on the question of whether the streetcar had stopped within the intersection for the purpose of permitting traffic to pass there was a sharp conflict in the evidence and substantial testimony evidencing it did not stop at all. Also immaterial, for the same reason, are the injuries suffered and damages resulting from the collision.

Within two days after the collision Waugh brought suit against the defendants Laycock and the streetcar company based upon negligence in the operation of the streetcar. Thereupon, such defendants procured the order of the trial court, hereinbefore referred to, making the insurance company a party defendant. Thereafter, each filed an answer and cross petition denying any negligence and alleging contributory negligence on the part of the plaintiff, and in addition set up a counterclaim against the plaintiff, the motorman for damages for personal injuries to himself, and the streetcar company for damages to its car, predicated upon various acts of negligence on the part of the plaintiff, some of which acts of negligence were specifically alleged to be as follows:

"(c) Said Virgil Waugh . . . entered the intersection when he knew or

should have known that said streetcar had started to cross the intersection and was within the intersection in front of said Waugh when said Waugh entered the intersection.

"(d) . . . failed to yield the intersection when he knew or should have known that the streetcar had entered the intersection ahead of him. . . .

"(f) . . . failed to yield the right of way to the streetcar which had entered the intersection prior to his entering same."

Plaintiff then filed a reply consisting of a general denial and an answer to the cross petition setting up certain contributory negligence on the part of the motorman, and the insurance company filed its answer consisting of a general denial and charging the motorman with the same acts of contributory negligence set forth in the plaintiff's answer. The defendants Laycock and the street company then filed a reply denying generally all allegations of new matter contained in such pleadings.

Issues having been joined the case came on for trial to a jury. After Laycock and the streetcar company had adduced evidence in support of their counterclaims both plaintiff and the insurance company demurred to that evidence on grounds later to be related, which demurrers were overruled by the trial court. The case was then submitted under instructions of the court and later the jury returned a verdict in favor of the defendant Laycock and the defendant streetcar company for costs of the action together with answers to special interrogatories submitted by the court.

Several post-trial motions were considered by the trial court. Laycock and the streetcar company filed a motion for judgment, ground two of which was for an interlocutory decree on their cross petitions, also a motion for a new trial. Plaintiff filed separate motions for judgment for costs notwithstanding the verdict and to tax costs. The action of the trial court on these motions and the judgment rendered by it on May 24, 1943, is reflected in the journal entry of judgment. It reads:

"Now on this day, the court having taken under advisement certain of the motions of the parties at the hearing thereof May 22, 1943, having fully considered the same, doth now overrule the plaintiff's motion for judgment for costs notwithstanding the verdict and overrules the plaintiff's motion to tax costs and sustains paragraph numbered 1 of the motion of the defendants, Laycock and Kansas City Public Service Company, for judgment, and for judgment and costs, except for the costs made in bringing the defendant, Western Casualty and Surety Company, into court, together with the costs of all papers and pleadings filed by it, and the court finds that the costs of bringing the Western Casualty and Surety Company into court and the costs

of all papers and pleadings filed by it should be taxed against the defendants, Laycock and Kansas City Public Service Company.

"It is therefore by the court considered that the plaintiff, Virgil Waugh, take nothing by his petition herein and that the defendants, N. Laycock and Kansas City Public Service Company, go hence without day with respect to plaintiff's said petition and recover of the plaintiff all the costs of this action, except the costs made in bringing the defendant, Western Casualty and Surety Company, into court and the costs of all papers and pleadings filed by it, the costs so taxed against the plaintiff being $139.25.

"It is further by the court considered that the defendants, N. Laycock and Kansas City Public Service Company, take nothing by their respective crossclaims for the recovery of money set forth in their respective answers and that the plaintiff and the defendant, Western Casualty and Surety Company, go hence without day as to such crossclaims and that the defendant, Western Casualty and Surety Company, recover of the defendants, N. Laycock and Kansas City Public Service Company, the costs of bringing Western Casualty and Surety Company into court and the costs of all papers and pleadings filed by it, taxed at $3.15."

Defendants Laycock and the streetcar company appeal from the order overruling paragraph number 2 of their motion for judgment, from the order overruling their motion for a new trial and from the last paragraph only of the judgment rendered by the district court, hereinbefore set forth in toto. Plaintiff Waugh and defendant insurance company do not appeal from the judgment rendered against them in so far as it relates to plaintiff's right to recover on his petition but they did file a cross-appeal in which they expressly limited their appeal to the ruling of the trial court on the demurrers to the evidence and to the ruling on the motion to tax one-half of the costs against the defendants Laycock and the streetcar company.

For reasons which we deem sufficient we first give our attention to the demurrers of appellees to the evidence offered by appellants in support of their counterclaims. Though made separately, the grounds of each were that the evidence offered by appellants failed to prove the allegations of their cross petitions or a cause of action in their favor against either of the appellees, and the additional ground the defendant insurance company and the plaintiff were misjoined as parties in such causes of action.

Appellants contend that since no appeal was taken within sixty days from the order overruling the demurrers to the evidence and no appeal was taken from the judgment rendered in their favor, it is now too late to obtain a review of the ruling of the trial court on such demurrers. There may be some merit to this contention but

since we find no error in the ruling of the trial court we prefer to base our decision on other grounds without deciding it.

In passing on a demurrer to evidence, the trial court and this court are concerned only with evidence and inferences therefrom, which supports a cause of action and do not consider evidence or inferences therefrom favorable to the parties demurring. (*Orr v. Hensy,* 156 Kan. 614, 615, 135 P. 2d 565; *State v. Garlinghouse,* 157 Kan. 91, 93, 138 P. 2d 421; *Schroeder v. Nelson,* 157 Kan. 320, 327, 139 P. 2d 868, and *Picou v. Kansas City Public Service Co.,* 156 Kan. 452, 134 P. 2d 686.)

We have carefully reviewed the testimony as disclosed by the record. Many witnesses testified regarding the factual situation existing at the time of and immediately prior to the collision. Their version of what happened and how the collision occurred varied and it would serve no useful purpose to here detail that testimony. It suffices to say it disclosed substantial evidence supporting the allegations contained in the pleadings of the parties.

Viewed in the light of the rule for testing sufficiency of evidence on demurrer, we have no hesitancy in holding there was ample testimony offered by appellants to support their claim the collision occurred as the result of the negligence of the plaintiff in the operation of his truck. True, there was evidence to the contrary but that cannot be considered by us in testing the propriety of the trial court's ruling. Nor do we have difficulty, by using the same rule as a yardstick, in concluding there was sufficient evidence to justify the trial court in overruling the demurrers on the ground there was an improper joinder of parties. Appellants proved, and it is not denied, that appellee Waugh possessed a permit from the State Corporation Commission to operate both as a contract and as a private carrier of property and that the appellee insurance company prior to the issuance of such certificate or license had issued, and there had been filed with the commission, the liability insurance bond required by G. S. 1935, 66-1,128. It is not argued that if at the time and under the circumstances of the collision Waugh's truck was being used in his business as a licensed carrier of property the insurance company was improperly joined as a party to the action. Our decisions have definitely determined that question. See *Schoonover v. Clark,* 155 Kan. 835, 837, 130 P. 2d 619; *Twichell v. Hetzel,* 145 Kan. 139, 64 P. 2d 557; *Fisher v. Central Surety and Ins. Corp.,* 149 Kan. 38, 45, 86 P. 2d 583, and *Dunn v. Jones,* 143 Kan. 218, 53 P. 2d 918, hold-

ing that under the statute above cited an insurance company issuing a policy of insurance in compliance with its requirements may be joined as a party in an action by an injured third party. What is urged, is that at the time of the collision Waugh was not engaged directly or indirectly in the pursuit of his business as a licensed carrier pursuant to the terms of the permit granted him by the commission. Specifically, it is claimed he was within the exemption provided for in G. S. 1935, 66-1,109, in that he had been hauling his own livestock to market and at the moment was transporting supplies for his own use and, therefore, the movement of his truck was not covered by the terms of the policy. The weakness of appellees' position arises, not in their interpretation of the force and effect of the statute pointed to or in the legal proposition urged by them, but in their misconseption of the weight and character of the evidence adduced by appellants in support of their contention Waugh was operating his truck pursuant to the terms of his permit at the time of the collision. The permit issued to Waugh, in addition to granting him the rights of a contract carrier, authorized and gave him. ". . . the privilege of hauling his own property as a private carrier, all operations to be restricted to within a fifty mile radius of Edna, Kansas, with an occasional trip beyond this radius, not to exceed three trips per calendar month; . . ."

G. S. 1935, 66-1,108 (i) definitional in character provides:

". . . The term 'private motor carrier of property' when used in this act shall mean any person engaged in transportation, by motor vehicle, of property sold or to be sold by him in the furtherance of any private commercial enterprise, or property transported by the owner, lessee or bailee for the purpose of lease, rent or bailment."

Waugh himself, with respect to the trip to and from Iowa, testified as follows: He trucked and farmed a little and raised some cattle; a few days before the accident a Mr. Traum of Atlantic, Iowa, came to his place at Edna, Kan., and bought some calves of him while there for delivery at Atlantic; the agreement as to price he was to receive for them was made at Edna; he wouldn't drive up there (Atlantic) and not know what he was going to get for a load of livestock; in response to a question as to whether in fixing his price he would ask a price sufficient to compensate him for taking the calves to Iowa, he answered "not necessarily"; he took the cattle up to Iowa to deliver them like he sold them to him; prior to the accident he had been to Atlantic where he took a load of calves up there; he sold a load of calves there; he sold the calves

to Traum at Edna on the basis of 11 cents a pound; they were his calves until they were weighed in Atlantic; he received the money from the sale of them; he put a load of corn in his truck to come back with; it was his own corn and he paid for it; after leaving the scene of the accident he called the commission man; the tag numbers he had secured from the Corporation Commission were on his tractor and trailer the night of the accident.

We have purposely set forth the major portion of Waugh's testimony as shown by the record with respect to what he was hauling on the trip in question, and why and how he happened to transport it. The most that can be said for his testimony on these subjects is that it is open to different interpretations, if, in fact, it is not actually conflicting. Under his testimony, the question of whether the truck was being operated pursuant to the terms of the permit, whether he was engaged in the transportation of property sold or to be sold by him in the furtherance of a private commercial enterprise or was transporting his own livestock to market or transporting supplies—in this case corn—for his own use, was a disputed question of fact which might properly be submitted to a jury for determination. Certain it is, giving the evidence of appellants the benefit of all the reasonable inferences to which it is entitled on a demurrer to the evidence, it cannot be said there was no evidence tending to show that Waugh was operating within the terms of his permit on the night in question. In the recent case of *Marshall v. Home Mutual Ins. Co.,* 154 Kan. 488, 493, 119 P. 2d 529, this court held the fact a truck was carrying KCC tags at the time of the accident—as was Waugh in the instant case—constitutes some substantial evidence the truck was being used in operations authorized by the permit at the time of the accident.

Wholly unnecessary to the conclusion just announced but worthy of note in passing upon the correctness of the trial court's ruling in overruling that portion of the demurrers relating to misjoinder of parties, is the well-established rule that a question as to misjoinder of causes of action or of parties cannot be raised by a demurrer to the evidence. (See *Fisher v. Central Surety and Ins. Corp.,* 149 Kan. 38, 86 P. 2d 583; *Minch v. Winters,* 122 Kan. 533, 540, 253 Pac. 578; *Yount v. Hoover,* 95 Kan. 752, 755, 149 Pac. 408, and *Groenmiller v. Kaub,* 67 Kan. 844, 73 Pac. 100.)

We next consider appellees' contention the trial court erred in overruling their motion to tax one-half of the costs against appel-

lants. This motion was based on the ground that approximately one-half of the costs had been incurred by the defendants by reason of their cross petition. Appellees did not attempt by their cross-appeal to appeal from the entire judgment as rendered. By its terms the notice of cross-appeal limited their complaint to the rulings of the trial court in overruling the demurrers to the evidence and the overruling of the motion to tax one-half of the costs against appellants. We are not at all certain the trial court's decision on this question was improper, but without passing upon such question and irrespective of its merit, appellees are not entitled to appellate review of such ruling. G. S. 1935, 60-3303, reads:

". . . No appeal shall be had or taken to the supreme court in any civil action for the recovery of money unless the amount or value in controversy, *exclusive of costs,* shall exceed one hundred dollars, except in cases involving the tax or revenue laws, or the title, to real estate, or an action for damages in which slander, libel, malicious prosecution or false imprisonment is declared upon, or the constitution of this state, or the constitution, laws or treaties of the United States." (Italics supplied.)

In giving consideration to the force and effect of the statute above quoted this court has always held that no appeal lies from a judgment where the only matter involved is the costs adjudged against the appellant. Under such circumstances this court is without jurisdiction to consider the appeal. (See *Frusher v. Cobb,* 151 Kan. 287, 98 P. 2d 89; *McCleery v. McCleery Lumber Co.,* 140 Kan. 117, 120, 33 P. 2d 1112, and *Oswald v. Railway Co.,* 104 Kan. 281, 178 Pac. 621.)

In the case of *Vrooman Co. v. Summer,* 110 Kan. 662, 205 Pac. 609, it was said:

"The only matter in controversy is the decision as to the recovery of costs. In plaintiff's notice of appeal it expressly stated that this question is the only part of the judgment brought up for review. Limitations have been placed upon appeals, and under the code no appeal lies from a decision where only costs are involved."

And held:

"Although the appellee does not raise the question of jurisdiction, it is the duty of the court, where the record discloses the lack of jurisdiction, to raise the question itself and dismiss the appeal." (Syl. ¶ 2.)

Appellants contend the trial court erred in refusing to render an interlocutory judgment on their counterclaim and in refusing to require the jury to determine the amount of their damages. Our examination of the record convinces us this contention cannot be

sustained. There was evidence, which if believed, justified a finding of negligence on the part of the operator of the streetcar. Moreover, we cannot subscribe to appellants' view the answers to the special interrogatories compelled a judgment in their favor.

Several questions are argued by appellants in support of their motion for a new trial, but the conclusion presently to be announced makes it unnecessary to give specific attention to all of them.

We have in force and effect in Kansas what is known as "the uniform act regulating traffic on highways." This law was passed in 1937 and now appears in our statute as chapter 8, article 5 of G. S. 1941 Supp. Some of its provisions have to do with the operation of streetcars upon streets and highways. One of them deals specifically with the duties of the driver of a vehicle when a streetcar has entered an intersection. G. S. 1941 Supp. 8-562, in so far as pertinent reads:

". . . (b) When a streetcar has started to cross an intersection, no driver of a vehicle shall drive upon or across the car tracks within the intersection in front of the streetcar."

G. S. 1941 Supp. 8-501, defines a vehicle as:

"Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power or used exclusively upon stationary rails or tracks."

Instruction 26 submitted by the trial court reads:

"It was the duty of the defendant, N. Laycock, agent of the defendant, Kansas City Public Service Company, in charge of the streetcar in question in this case, to use reasonable and ordinary care in the operation of said streetcar in order to prevent injury to himself and others who might be rightfully using the streets in question in this case. In this respect, if you find from a preponderance of the evidence that the defendant Laycock actually saw, or by the exercise of ordinary care and precaution could and should have seen the plaintiff approaching so closely as to constitute an immediate hazard, in time to have stopped the streetcar and thereby avoided the collision, a failure in this respect would be negligence on the part of the defendant, Laycock, and the Kansas City Public Service Company."

Before its submission and in their motion for a new trial appellants objected to this instruction, specifically pointing to its failure, and failure of the instructions generally, to deal with the duties and obligations of the driver of a motor vehicle under G. S. 1941 Supp. 8-562, with respect to the crossing of an intersection in front of a streetcar when such car had started to cross it. They contended there, and argue here, that a streetcar which has entered on

intersection has a right to assume vehicles approaching will obey the law and not attempt to pass in front of it and that such instruction placed too strict a duty upon the streetcar and its operator. Under the circumstances just related, even though it does not appear appellants requested an instruction to cover this subject generally, the contention advanced by them is entitled to review on appeal. (See *Barker v. Seber*, 154 Kan. 24, 30, 114 P. 2d 791.)

Appellants further complain, although the record fails to show they made objection thereto in the court below, that instruction 24 is erroneous in that it fails to correctly define the duties of the truck driver under the statute and the facts as disclosed by the evidence. That instruction reads.

"The mere fact, if you find it to be a fact, that plaintiff crossed defendant's tracks when he knew a streetcar was approaching, would not in itself prevent plaintiff from recovering in this action. However, before plaintiff could attempt to cross the defendant's tracks under those circumstances, he was required to use reasonable and ordinary care to prevent injury to himself and to others, and this required him to observe and estimate with reasonable accuracy his distance from the streetcar and the speed of its oncoming; to make a calculation and comparison of the time it would take a streetcar to come and the time it would take him to cross the tracks, and to attempt to cross the tracks at a given rate of speed only in the event that a reasonable and prudent person would attempt to cross the tracks under the same circumstances."

At the outset it must be conceded there was evidence, if, in fact, it be not admitted the testimony was undisputed, the streetcar had started to cross and was within the intersection at the time of the collision. Waugh, the driver of the truck, admitted it. By way of confession and avoidance, he stated that after he had slowed down he saw the streetcar stop in the intersection, then start up and attempt to cross.

So far as it concerns appellants' appeal from the judgment rendered against them on their cross petitions, it must be kept in mind that in establishing their cause of action against the truck driver, the burden was on them, not only to show such driver was negligent but that that negligence in some way contributed to and was the proximate cause of their injuries. They alleged as negligence, that the truck driver failed to yield the right of way at the intersection and attempted to cross such intersection after the streetcar had started to cross it, and they offered evidence in support of their allegations with respect thereto. They were, therefore, in view of the porvisions of G. S. 1941 Supp. 8-562, entitled to an instruction advising the jury

as to the duties and obligations resting upon the truck driver at the intersection under the conditions and circumstances disclosed by the evidence. It may be urged the mere quoting in the instructions of the language of the statute—and that was done—serves the purpose just referred to. We do not think so. The determination of such questions cannot be left to speculation and conjecture on the part of a jury.

Whatever may have been the rule in this state, prior to June 30, 1937, the effective date of the uniform act regulating traffic on the highways, with respect to the duties and obligations of drivers of vehicles who attempted to cross a street intersection after a streetcar had entered and started to cross such intersection, is now subject to the limitations and obligations imposed by the new enactment. The instructions here quoted might have been entirely proper under former decisions interpreting statutes then in force and effect. (See *Railroad Co. v. Gallagher,* 68 Kan. 424, 428, 75 Pac. 469, and *Keuchenmeister v. Wichita Transportation Co.,* 137 Kan. 344, 347, 20 P. 2d 457.)

With specific reference to instruction 26, testing it by the requirements of G. S. 1941 Supp. 8-562, it must be held to fall far short of the law determinative of the rights of the parties in the instant case under all the facts and circumstances. It failed to properly define the duty resting upon appellants in the operation of the streetcar after it had entered into the intersection at a time when the truck was a considerable distance to the north of the intersection; it ignored the right of the operator of such car to assume the truck driver would observe the statute and his right to act upon such assumption until he had knowledge to the contrary; it neglected to state that until he acquired that knowledge such operator could not be charged with negligence in acting upon that assumption. And, so far as it related to negligence of the truck driver, it wholly failed to advise the jury that under appellants' theory of the case, if its evidence was believed, it was the duty of such driver to stop and not attempt to cross in front of the streetcar while it was proceeding across the intersection. Our examination of the record fails to disclose that other instructions supplied these deficiencies. It necessarily follows that too strict a duty was imposed upon the streetcar and its operator and too light a duty was placed upon the truck driver. The instruction as given was erroneous, its submission to the jury in such condition and under the circumstances here related was error

and requires the granting of a new trial on issues restricted to the cause of action set forth by appellants in their respective cross petitions.

In passing, although it is our view, instruction 24 is not here subject to review, it can be said that if its provisions are to be construed as limited to a streetcar which has entered an intersection, and not to a streetcar which is approaching but has not entered such intersection, it too is erroneous in that it advises the jury the driver of a truck has a right to drive upon and across the car tracks within an intersection in front of a streetcar when the streetcar has started to cross such intersection, whereas G. S. 1941 Supp. 8-562 expressly prohibits that action.

The judgment of the district court overruling appellants' motion for new trial is reversed and a new trial directed on the issues raised by the pleadings with respect to the cause of action set forth in the respective cross petitions of appellants.