STELLA BRIGGS, *Appellee*, v. CLYDE BURK and THE HARTFORD
ACCIDENT & INDEMNITY Co., a Corporation, *Appellant*.

No. 38,546

SHIRLEY BURNS, *Appellee*, v. CLYDE BURK and THE HARTFORD
ACCIDENT & INDEMNITY Co., a Corporation, *Appellant*.

No. 38,556

MRS. MAX ELDON WADE, *Appellee*, v. CLYDE BURK and THE HART-
FORD ACCIDENT & INDEMNITY Co., a Corporation, *Appellant*.

Opinion filed January 26, 1952.

(239 P. 2d 981)

*David H. Fisher*, of Topeka, argued the cause, and *Irwin Snattinger*, of
Topeka, was with him on the briefs for the appellant.

*Ward D. Martin*, of Topeka, argued the cause, and *A. Harry Crane* and
*Arthur L. Claussen*, both of Topeka, and *Leonard W. McAnarney*, of Lyndon,
were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: In each of these cases the plaintiff sued for dam-
ages for the wrongful death of her husband alleged to have re-
sulted from the negligence of the defendant, Clyde Burk. They
were filed separately in the district court of Shawnee county and
one was assigned to each of the three divisions of that court. Burk's
insurance carrier was made a party-defendant and filed a demurrer
to the petition as amended upon the ground that the petition does
not state a cause of action against it. In each of the cases the de-
murrer was overruled and the insurer alone has appealed. The

cases are consolidated here because the same legal question is presented in each of them.

The facts pertinent to this appeal may be stated briefly as follows: On February 9, 1950, Robert C. Burns, husband of plaintiff in case No. 38,546, was operating a described automobile owned by him. Riding with him was Joseph E. Briggs, husband of plaintiff in case No. 38,533, and Max Eldon Wade, husband of plaintiff in case No. 38,546. Burns was driving his automobile south from Topeka on U. S. Highway No. 75, which is paved. At a place about three-tenths of a mile south of the Carbondale intersection Clyde Burk, doing business as the Burk Nursery Company of Dodge City, was driving his Ford pick-up truck north on the same highway and negligently drove or allowed the truck to turn into the west side of the highway in front of the automobile driven by Burns, causing a collision, as a result of which each of the three men who were riding in the automobile received fatal injuries.

In this appeal we are not concerned with the negligence of Burk. He has filed an answer in each case and the cases have not been tried. Appellant here does not contend that the respective petitions do not state causes of action against Burk. With respect to appellant it is alleged in the petition, as amended in case No. 38,533 (and substantially the same in each of the other cases) the following:

"That the defendant, The Hartford Accident & Indemnity Company, is a foreign insurance corporation licensed to engage in the insurance business in the state of Kansas, and that said corporation insures against liability to others by reason of the operation of motor vehicles; that prior to the time of said accident above set forth the defendant, Hartford Accident & Indemnity Company, issued and delivered a policy of motor vehicle liability insurance to the defendant, Clyde Burk, for a valuable consideration, a copy of which is filed herein, marked 'Exhibit A' and made a part hereof, by which policy the company agreed to pay any liability incurred on account of the injury to property or persons of others by reason of the operation of the motor vehicle owned and operated by the defendant, Clyde Burk, and his agents, servants, and employees at the time and place hereinbefore referred to; that said policy of insurance was filed by the defendants with the State Corporation Commission of the state of Kansas and was approved by said Commission, all in accordance with G. S. 1935, 66-1,128; that said policy of insurance was in full force at the time of said collision; and that said defendant, Hartford Accident & Indemnity Company, is liable to the plaintiff for the damage caused by the said collision because of the negligence of the defendant, Clyde Burk, at the time and place hereinbefore mentioned.

"Plaintiff further alleges that to the best of her information and belief the said Clyde Burk had complied with all of the conditions contained in said policy; that although the place of the collision at Carbondale, Kansas, is at or

about 240 miles from Dodge City, Kansas, that at said time and place aforesaid the said Clyde Burk was then and there acting pursuant to and in the furtherance of his business and occupation, to-wit: the nursery business, and more specifically, the said Clyde Burk at said time and place was operating as a private carrier and transporting nursery stock in said truck in the furtherance of his business; and that said truck was being operated under a private carrier permit Number 35-74 issued by the Corporation Commission of the state of Kansas, a certified copy of which certificate is filed herein, marked Exhibit 'B' and made a part hereof, and said vehicle was being operated in the state of Kansas and at said time and place pursuant thereto as hereinbefore alleged, and was being operated upon the highways of the state of Kansas at said time and place pursuant to Section 66-1,128 G. S. 1935."

Exhibit "B," attached to and made a part of the petition, reads:

"BEFORE THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS

"In the matter of the application of Clyde Burk, dba Burk's Nursery of Dodge City, Kansas, for an Order Restricting Private Carrier Permit 35-74 within a radius of one hundred-fifty (150) miles of base point.　　Permit No. 35-74

"ORDER RESTRICTING PERMIT

"On this 25th day of May, 1942, comes on for consideration and determination by the Commission, the matter of the application of Clyde Burk, dba Burk's Nursery of Dodge City, Kansas, for an order restricting said operator to operations within a radius of one hundred-fifty (150) miles of said operator's home, 3 miles south-west of Dodge City; and the Commission after examining the files and being fully advised in the premises, finds that said application should be granted.

"IT IS, THEREFORE, BY THE COMMISSION ORDERED that said private carrier permit No. 35-74, issued to said Clyde Burk, dba Burk's Nursery of Dodge City, Kansas, be and the same is hereby restricted to permit said applicant to operate only within a radius of one hundred-fifty (150) miles of said operator's home, 3 miles south-west of Dodge City, Kansas.

"The Commission retains continuing jurisdiction in this matter to make such further restrictions, reservations, limitations and amendments to this permit as to it may seem advisable in the premises.

RICHARD B. MCENTIRE
RICHARD B. MCENTIRE, *Secretary.*"

SEAL
ECS"

We first take note that the above order of May 25, 1942, is not the permit which at some time prior thereto had been issued to Burk. Since that was referred to in the order as a "private carrier permit" we assume that at sometime prior to the date of this order there had been issued to Burk a permit to operate as a private motor carrier of property, as that term is defined in G. S. 1949, 66-1,108 (i), as follows:

"The term 'private motor carrier of property' when used in this act shall mean any person engaged in transportation, by motor vehicle, of property sold or to be sold by him in the furtherance of any private commercial enterprise, or property transported by the owner, lessee or bailee for the purpose of lease, rent or bailment."

And G. S. 1949, 66-1,111, provides:

"No . . . private motor carrier of property shall operate any motor vehicle . . . on any public highway in this state except in accordance with the provisions of this act."

Counsel for appellant argue there can be no question of the state corporation commission's authority to restrict the permit, citing G. S. 1949, 66-1,112b. This deals with an application for a permit and provides for a notice and hearing and for terms of permits, and contains the following:

"The commission is hereby vested with power and authority to grant or deny the permit prayed for, or to grant it for the partial exercise only of the privilege sought, . . ."

It is observed that the order of May 25, 1942, was not made upon the application for a permit, neither was it made after notice and a hearing. The order was *ex parte*. Apparently Burk filed an application to have the permit previously issued to him limited as to area, and that the commission examined the files and made an order granting the request. What the files showed is not disclosed. The granting of these permits was regarded by our legislature as a matter important to the public as well as to the applicant. We are cited to no statute of this state which authorizes the commission to modify them by an *ex parte* order as to area covered. We shall not rest our decision upon this point, however, since it has not been argued by counsel. Apparently counsel on both sides have presented the case in the trial court and here as though the commission's order of May 25, 1942, was valid, and for the sole purpose of this case, we shall so regard it.

Counsel for appellant argue that Burk was not operating his vehicle at the time of the accident pursuant to his permit and point out that the order of the corporation commission of May 25, 1942, restricts the permit previously issued to Burk to the territory within a radius of 150 miles of Burk's base point, which was three miles southwest of Dodge City, and that the accident happened 240 miles from Dodge City. On this point they cite *Smith v. Republic Underwriters*, 152 Kan. 305, 101 P. 2d 858, which was considering

a provision in an insurance policy which limited coverage to vehicles "being operated *'pursuant to the permit,'* " and where the court held:

". . . the burden is upon the plaintiff, in establishing a cause of action, to show by substantial evidence which proves or tends to prove that the vehicle at the time in question was operated in the business or service authorized by the certificate or permit, . . ."

In their brief counsel quote from the opinion the following:

"Having given consideration to the commercial operations provided for in the certificate or permit—and therein specifically set out—the company issues a policy covering vehicles engaged in such operations. It does not insure vehicles otherwise engaged—that is, which are being used for commercial, personal or social purposes outside the operations covered by the permit. Or, as the endorsement has it, the policy covers vehicles being operated *'pursuant to the permit.'* Accordingly, in determining whether there was insurance coverage, a material question was whether the vehicle, at the time of the accident, was being operated under or·pursuant to the permit."

The opinion continues:

"This does not mean that deviation from routes specified in a permit or some other departures from the precise terms of a permit suspend the policy. Not at all. A contrary doctrine has been frequently stated. . . . In this connection we must note an obvious misunderstanding which pervades the record. It is the apparent assumption that unless the McFadden truck was being operated *'pursuant to the permit'* it was being operated contrary to the permit *or in violation of the law.* Of course, that does not at all follow. . . .

"There is nothing novel in the limitation of coverage contained in the instant endorsement. For instance, provisions are common which limit coverage to specified *use* of the vehicle. In fact, the instant provision is really one as to *use.* . . ."

Appellants also cite *Schoonover v. Clark,* 155 Kan. 835, 130 P. 2d 619. There a truck owner who had a permit to operate his truck as a private carrier, after completing a trip using his truck in the business authorized by the permit, went on a pleasure trip to Dodge City, sixty-eight miles from the place he ceased to use his truck on the trip and there had an accident, for which he was sued. It was held the insurer could not be joined in that action for the reason that the truck was not being used under the permit at the time of the accident.

In *Waugh v. Kansas City Public Service Co.,* 157 Kan. 690, 143 P. 2d 788, the question of whether the insurer of a truck owner, who had a permit as a contract and as a private motor carrier of property could be joined as a defendant, it was said (p. 696):

"It is not argued that if at the time and under the circumstances of the

collision Waugh's truck was being used in his business as a licensed carrier of property the insurance company was improperly joined as a party to the action. Our decisions have definitely determined that question. See *Schoonover v. Clark,* 155 Kan. 835, 837, 130 P. 2d 619; *Twichell v. Hetzel,* 145 Kan. 139, 64 P. 2d 557; *Fisher v. Central Surety and Ins. Corp.,* 149 Kan. 38, 45, 86 P. 2d 583, and *Dunn v. Jones,* 143 Kan. 218, 53 P. 2d 918, . . ."

So, in each of the cases cited it was the use of the truck for the purpose authorized by the permit that was the controlling question. In the petition in this case such use was alleged at the time of the accident in question.

In *Putts v. Commercial Standard Ins. Co.,* 173 F. 2d 153 (Tenth Circuit), the owner of the truck was the holder of a permit issued by the State Corporation Commission of New Mexico, which expressly limited the coverage of the policy to the motor vehicle described therein while being operated within fifty miles of Deming, New Mexico, as a motor carrier of goods for hire; also the holder of a permit from the Interstate Commerce Commission to operate in interstate commerce as a contract carrier of goods for hire. At the time of the accident which gave rise to the suit he was enroute to Dallas, Texas, for the purpose of transporting merchandise belonging to him for use in his cotton gin. The court held he was not at that time acting under either one of the permits and hence that the insurer was not liable, but the court took occasion to say:

"Had the Chevrolet truck been operating under either the permit issued by the Corporation Commission or the permit issued by the Interstate Commerce Commission at the time of the accident, the area of operations limitation would not have applied to a claim asserted against the Insurance Company by Flannes."

In *Trinity Universal Ins. Co. v. Cunningham,* 107 F. 2d 857 (Eighth Circuit), construing the Missouri bus and truck law, the court had occasion to say:

"Appellant contends that the phrase 'pursuant to the certificate of convenience and necessity' means in effect, 'in accordance with,' and 'as limited by any and all provisions contained in the certificate of convenience and necessity.' If there were such a limitation there would be no coverage of the motor vehicle that was being operated by the insured at the time of the collision, . . .

"To construe this phrase as interpreted by appellant would be a strict construction and would not be in conformity with the general intent and purpose of the rules of the Commission contained in the endorsement or rider. A more reasonable and, we think, the proper interpretation is, 'pursuant,' in the sense of 'acting or done in consequence' of the permit of convenience and necessity, and in the prosecution of the business authorized therein. . . ."

In *Miller v. State Automobile Asso.*, 74 N. D. 306, 308, 21 N. W. 2d 621, it was said:

"The term 'pursuant to' in the endorsement does not operate to restrict the liability of the Insurance Company to injuries caused by motor vehicles that at the time the injury is inflicted are being operated in strict conformity with the conditions of the certificate, the rules and regulations of the Board, and the laws of the state relating to the operation of motor vehicles. The liability of the insurer extends to all acts of negligence of the carrier, including those which involve disregard or violation by the carrier of the rules of the Board or the laws of the state."

One of the principal purposes of our statutes pertaining to the regulation of motor carriers of persons and property is to have the motor vehicles operated in such a way as to promote the safety and welfare of the public. The commission is authorized to issue permits to private motor carriers of property, require annual and other reports, and prescribe reasonably necessary rules and regulations. It is unlawful for a private motor carrier of property to operate within this state without obtaining a license therefor, which can be issued only upon written application to the corporation commission stating the ownership, financial condition, equipment to be used, and such other information as the commission may require. In addition to the regular license fees or taxes imposed there is levied a gross ton mileage tax for which the commission shall issue appropriate plates bearing the letters "K. C. C.," which shall be attached to the vehicle for which the plates are issued. The commission is given authority to administer and enforce all provisions of the act and to inspect the books or other documents for that purpose. A number of the safety rules are embodied in the statute. This summarization is not intended to be complete. Any violation of the act by the carrier is declared to be a misdemeanor for which upon a conviction the carrier may be fined in a sum not exceeding $500, and the permit issued to the carrier may be suspended or revoked. (See, G. S. 1949, Chap. 66, Art. 1, sections 1,112d; 1,112g; 1,115, 1,120; 1,120a; 1,123; 1,129; 1,130; 1,112b.)

If we were to carry the argument of counsel for appellant to the extreme, any material violation of the statutory requirements imposed upon the holder of the permit would constitute a violation of the permit and thereby relieve the insurer of liability under the policy. We think the position is untenable. Under the allegations of the petition we conclude that the insurer is not released from liability upon the ground that the accident occurred about 240 miles from Dodge City.

With reference to insurance the statute provides:

"66-1,128. No certificate or license shall be issued by the state corporation commission to any 'public motor carrier of property,' 'public motor carrier of passengers,' 'contract motor carrier of property or passengers' or 'private motor carrier of property,' until and after such applicant shall have filed with, and the same has been approved by, the state corporation commission, a liability insurance policy in some insurance company or association authorized to transact business in this state, in such reasonable sum as the commission may deem necessary to adequately protect the interests of the public with due regard to the number of persons and amount of property involved but in no event shall such sum be less than five thousand dollars ($5,000) for loss to property of others in any one accident, ten thousand dollars ($10,000) for personal injury or death to any one person in any one accident and $20,000 for injury or death to two or more persons in any one accident, which liability insurance shall bind the obligors thereunder to pay compensation for injuries to persons and loss of or damage to property resulting from the negligent operation of such carrier. No other or additional bonds or licenses than those prescribed in this act shall be required of any motor carrier by any city or town or other agency of the state."

Counsel for appellant next contend that Burk was committing a violation of the insurance policy not covered by the Kansas liability and property endorsement. With respect to that they point out that one of the endorsements uses the following phrase:

". . . operated or used by the assured pursuant to the certificate, permit or license issued by the State Corporation Commission of Kansas."

The interpretation of that phrase has already been determined. Appellant further contends that Burk was violating the terms of the insurance policy filed with the state corporation commission.

The policy filed gave the name of the insured as Clyde Burk; his address as "Route No. 1, Dodge City, Ford county, Kansas;" his occupation or business as "Nursery"; named the insured as an individual; the policy period from April 1, 1949, to April 1, 1950; the policy stated coverage to be: "A—Bodily Injury Liability, B—Property Damage Liability, C—Medical Payments," with limits of liability for each, and it contained this provision:

"Item 5. The purposes for which the automobile is to be used are 'pleasure and business,' unless otherwise stated herein (typed in) Commercial—Business and Pleasure. (a) The term 'pleasure and business' is defined as personal, pleasure, family and business use. (b) The term 'commercial' is defined as use principally in the business occupation of the Named Insured as stated in Item 1, including occasional use for personal, pleasure, family and other business purposes."

It contained the following under "Insuring Agreements":

"VI. Policy Period, Territory, Purposes of Use

"This policy applies only to accidents which occur during the policy period, while the automobile is within the United States of America, its territories' or possessions, Canada or Newfoundland, or is being transported between ports thereof, and is owned, maintained and used for the purposes stated as applicable thereto in the Declarations."

The policy was filed with the commission and at that time contained two endorsements, each dated April 1, 1949. The first reads:

"Automobile Interests Covered (Truckmen or Bus Operators) It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability does not cover as an Insured any person or organization, or any agent, employee or contractor thereof, other than the named Insured, who is required to carry automobile liability insurance under any motor carrier law."

The second reads:

"Public Liability and Property Damage Endorsement
The State Corporation Commission, State of Kansas, Docket No. 15600

"It is understood and agreed that the policy to which this endorsement is attached is written in pursuance of and such policy shall fulfill the insurance requirements of section 66-1,128, General Statutes of Kansas 1935, or as may be hereafter amended, and the rules and regulations of the State Corporation Commission adopted thereunder with respect to liability for injuries to persons (except employees of the assured injured in the course of their employment) and for damage to property (except cargo). The obligations and promises of this endorsement, however, shall be effective only while the equipment covered by this policy is being operated within the State of Kansas.

"It is further understood and agreed that the company waives a description of the motor vehicles, trailers or semitrailers insured hereunder and the policy is hereby amended and extended so as to cover any and all motor vehicles, trailers and semitrailers operated or used by the assured pursuant to the certificate, permit or license issued by the State Corporation Commission of Kansas.

"Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof by the assured, shall relieve the company from liability thereunder as an insurer; provided, that nothing herein shall be construed to prohibit the company from providing for the right of reimbursement or subrogation as between itself and the assured in cases where the carrier is operating equipment in violation of the permit, license or certificate issued to him by the Commission.

"The cancelation of the policy to which this endorsement is attached shall not take effect until after ten (10) days notice in writing, by the company, shall have first been given to the State Corporation Commission of Kansas, at its office at Topeka, Kansas. Said ten (10) days notice to commence from the date notice is actually received at the office of the Commission.

"Attached to and forming part of policy number AE 37533 of the Hartford A & I of Hartford, Conn. issued to Clyde Burk."

Without going into an extended discussion of it we think it cannot be said that the insurance policy was being violated at the time and place of the accident. Counsel have cited a number of cases, all of which and others have been examined, but we think it not worth while to go into an extended discussion of them.

The judgments of the respective trial courts which were appealed from are affirmed.