92 So.2d 11

### Amos DRAKE

v.

### PENNSYLVANIA THRESHERMEN & FARMERS' MUTUAL CASUALTY INSURANCE COMPANY.

6 Div. 12.

Supreme Court of Alabama.

Jan. 10, 1957.

Lipscomb, Brobston, Jones & Brobston, Bessemer, for appellant.

London & Yancey and Jas. E. Clark, Birmingham, for appellee.

MERRILL, Justice.

The appellant, Amos Drake, was injured on February 5, 1952, while riding as a passenger in a bus being operated by the New Deal Riding Club. He procured a judgment against said Club in the amount of $2,500 and sought to enforce it by a third party action under a liability insurance policy issued to the Club by the appellee, Pennsyl-

**447**

vania Threshermen & Farmers' Mutual Casualty Insurance Company.

The complaint was in one count with a copy of the insurance policy attached as an exhibit. The pleadings progressed to defendant's rejoinder, the effect of which was that prior to the date of plaintiff's injury, this court had affirmed a decree of the Circuit Court of Jefferson County, in Equity, holding a permit issued to New Deal Riding Club by the Alabama Public Service Commission to be null and void; and therefore, that on February 5, 1952, the New Deal Riding Club was not operating as a common carrier under any valid permit or certificate issued to it by the Alabama Public Service Commission.

To this rejoinder, plaintiff interposed a demurrer which was overruled and because of the adverse ruling of the court, plaintiff took a nonsuit and appealed to this court.

At the inception of the policy of insurance, the New Deal Riding Club was operating under a certificate of convenience and necessity issued by the Alabama Public Service Commission pursuant to the Alabama Motor Carrier Act of 1939, Code 1940, T. 48, § 301(1) et seq. On October 15, 1951, in The Case of Ala. Public Service Comm. v. Higginbotham, 256 Ala. 621, 56 So.2d 401, this court affirmed (and on January 31, 1952, denied application for rehearing) the decree of the circuit court referred to in defendant's rejoinder.

The policy of insurance which the appellee issued to the New Deal Riding Club was to insure against liability arising from the operation of two vehicles, one a 1946 Chevrolet bus, and the other a 1942 Ford bus. Any vehicle used by the insured but not owned by it was also covered specifically by the policy while it was being used as a "temporary substitute" for either of the two described buses.

The bus involved in the accident was a 1947 Studebaker bus which was owned and regularly operated by the New Deal Riding Club and, therefore, did not come within the terms of the policy.

As a part of the policy of insurance, there was an attached endorsement to the effect that the policy was "written in pursuance of and is to be construed with an Act of the Legislature of Alabama approved July 9, 1940, known as the 'Alabama Motor Carrier Act of 1939.'" A portion of that Act as amended, Code 1940, T. 48, § 301(16), provides:

"No certificate or permit shall be issued to a motor carrier or remain in force, and no motor carrier subject to the provisions of this article shall engage in any operation on any highway of this state, unless such carrier complies with such reasonable rules and regulations as the commission shall prescribe governing the filing and approval of surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, in such reasonable amounts as the commission may require, conditioned to pay, within the amount of such surety bonds, policies of insurance, qualifications as a self-insurer or other securities or agreements, any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles under certificate or permit, or for loss or damage to property of others."

█ If the New Deal Riding Club had been operating under a certificate of convenience and necessity, the insurer would have been liable to pay a judgment procured against the insured involving a vehicle other than those specifically described in the policy. Fidelity & Casualty Co. of New York v. Jacks, 231 Ala. 394, 165 So. 242.

The appellee does not contend that the policy of insurance was not in force on February 5, 1952. It concedes that the policy was in effect, but insists that the policy cannot be aided by Alabama Motor Carrier Act because the insured was not

operating "under certificate or permit" at the time of the accident. The pivotal inquiry therefore is whether the voiding of the certificate limits the insurer's liability to the terms of the policy. By overruling plaintiff's demurrer to defendant's rejoinder, the court below has held that it does, and we think it was correct in so holding.

■ As already stated, the insurance policy would not, by its terms, cover the Studebaker bus which was involved when plaintiff was injured. Paraphrasing what this court said in the Jacks case, supra, we are not impressed with the suggestion that this bus should be treated as a "temporary substitute" for either of the other buses described in the policy. We also note that appellant does not now insist that the Studebaker bus was a "temporary substitute." Coverage of the bus can only result from reading into the policy T. 48, § 301(16), as amended, as provided in the Alabama Public Service Commission endorsement. That brings us to a consideration of what the statute actually says. It requires that the policy of insurance be "conditioned to pay * * * any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation * * * of motor vehicles under certificate or permit, or for loss or damage to property of others."

It seems to us that the Legislature made it perfectly clear that the coverage in such policies should be on vehicles "under certificate or permit" and it is conceded by all parties that there was no valid certificate or permit in existence applying to the New Deal Riding Club or any of its vehicles when appellant's injury occurred. Some statutes and ordinances in other jurisdictions provide that the insurance policy shall continue until the insured ceases to do business. Sills v. Schneider, 197 Wash. 659, 86 P.2d 203, or for continuing liability, Cook v. Checker Mut. Auto. Ins. Co., 337 Mich. 667, 60 N.W.2d 194, or contain no terms of limitation, Bentley v.

Fayas, 253 Wis. 531, 34 N.W.2d 675; Briggs v. Burk, 172 Kan. 375, 239 P.2d 981.

■ But we do not have to arrive at the legislative intent by construction because the language of the statute is unambiguous and the intent clearly expressed that the policies shall cover vehicles "under certificate or permit." We have previously held that courts can only learn what the Legislature intended by what it has said, and we have no right to stray into mazes of conjecture or search for an imaginary purpose in construing a statute; and where the language of a statute is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction. State v. Bay Towing & Dredging Co., 264 Ala. 187, 85 So.2d 890.

■ We have also said that while there are occasions when courts must correct or ignore or supply obvious inadvertences in order to give a law the effect which was primarily intended by the Legislature, we do not subscribe to the doctrine that the judiciary can or should usurp the legislative function in a republican form of government; and, where the statute is plain, we must leave the amendment of it to the Legislature. Hamilton v. Smith, 264 Ala. 199, 86 So.2d 283.

■ In Baggett v. Jackson, 244 Ala. 404, 13 So.2d 572, when passing on the identical words in § 301(16), but on another point, we said the language of the statute was plain and unambiguous. Therefore, irrespective of what we might think it desirable for the statute to say, we are constrained to hold that it does not apply to policies where the vehicles are not "under certificate or permit" of the Public Service Commission.

This specific question has not been before this court prior to this time and we have not found or been cited to a case exactly in point.

There is no question but that the primary purpose of the Motor Carrier Act is to provide protection for the public. See Baggett v. Jackson, 244 Ala. 404, 13 So. 2d 572; Employers Ins. Co. of Alabama v. Johnston, 238 Ala. 26, 189 So. 58. In Commercial Standard Ins. Co. v. Robertson, 6 Cir., 159 F.2d 405, the court was faced with a problem similar to ours which involved the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq. In that case, no certificate of convenience and necessity had ever been issued to the insured. We think the language of that court regarding the purposes of the Federal Act is also applicable to the Alabama Act. At 159 F.2d 409, 410, the court said:

" * * * It would seem, therefore, to be clear that among the purposes to be served by the Act, not necessarily least in importance, was the protection of the public on highways of interstate commerce from the hazards of operation by inexperienced, incompetent and unfit persons, by those engaged in excess of maximum hours, or operating with bad conditioned and dangerous equipment. That is now the declared national policy in the public interest.

"Two conclusions are to be drawn therefrom. The first is that an insurer undertaking to write public liability policies to motor carriers, is given the assurance by the issuance of a certificate from the Interstate Commerce Commission that the carrier has met the minimum requirements of the Commission in respect to competence of employees, hours of employment and condition of equipment, and will remain thereafter subject to the regulations and orders of the Commission.

Without such assurance it is to be assumed that contracts insuring interstate operation would not have been entered into. The second is that it is among the major purposes of the Act to keep unqualified operators and bad conditioned equipment from the highways of interstate commerce.

"We are not unmindful of the public interest in an insurance contract which assures the public protection from negligent operation and provides compensation for injuries resulting therefrom. It is this public interest that in the main led to the decision below. We are persuaded, however, that the more fundamental and all-embracing public interest sought to be preserved by the Motor Carrier Act, is the keeping of dangerous operators and instrumentalities off the roads, and that it is this overriding public interest which should govern decision here. To that end there should be no judicial condonation for evasion or defiance of law. When two considerations, both in the public interest, collide and may not be reconciled, it seems to us that the larger and more fundamental public interest must govern."

See also, Putts v. Commercial Standard Ins. Co., 10 Cir., 173 F.2d 153; Allen v. American Fidelity & Casualty Co., 5 Cir., 54 F.2d 207; Smith v. Republic Underwriters, 152 Kan. 305, 103 P.2d 858, and Fullmer v. Farm Bureau Mut. Automobile Ins. Co., 350 Pa. 451, 39 A.2d 623. The judgment of the circuit court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.