106 So.2d 158

**Ex parte ALABAMA PUBLIC SERVICE COMMISSION.**

**3 Div. 841.**

Supreme Court of Alabama.

Oct. 30, 1958.

John Patterson, Atty. Gen., Roy W. Kimbrough, Sp. Asst. Atty. Gen., Wm. C. Younger, Asst. Atty. Gen., and Wm. F. Black, Montgomery, for petitioner.

Jos. F. Johnston, Meade Whitaker, David
R. Baker and Cabaniss & Johnston, Bir-
mingham, for respondent.

MERRILL, Justice.

In November, 1956, the Southern Railway Company, a Corporation, hereinafter referred to as Southern, filed a petition with the Alabama Public Service Commission, hereinafter referred to as the Commission, in pursuance of Tit. 48, § 106, Code 1940, for permission to discontinue its intrastate passenger trains Nos. 19 and 20 operating between Birmingham and Mobile, via Selma.

On July 8, 1957, after a public hearing, the Commission entered an order denying Southern's petition stating that "we are of the opinion that a public need exists for the service and that need outweighs the losses being sustained by petitioner."

Southern appealed this order to the Circuit Court of Montgomery County, and that court, after a hearing, entered an order on May 22, 1958, reversing the order of the Commission, and directed it to enter an order permitting Southern to discontinue the trains after giving the statutory notice of ten days.

On May 28, 1958, Southern filed an application for a rehearing and requested the Circuit Court of Montgomery County to allow it to supersede the order of the Commission, and to permit the discontinuance of the trains pending the final outcome of the matter.

On June 13, 1958, the circuit court granted the rehearing and ordered the supersedeas, subject to a bond of $10,000, which Southern filed. The commission appealed to this court on June 17, and on June 19, started the instant proceeding by filing a petition for mandamus to Judge Jones to require him to set aside his order of supersedeas.

On July 24, we issued a rule nisi to Judge Jones to set aside his order or show cause why he should not do so, and made it returnable on October 6, 1958. The Commission argues that the Circuit Court of Montgomery County, in Equity, did not have the authority to supersede the order of the Commission. The trial court, represented by counsel for Southern, takes the position that the court did have the authority, both by statute and under its plenary power, and also that the Commission is barred by the doctrine of collateral estoppel from maintaining this action.

We first dispose of the question of collateral estoppel. In 1948, Southern applied to the Commission for permission to discontinue two trains in north Alabama. The Commission, after a public hearing, denied the petition.

Instead of pursuing its right of appeal to the state courts, Southern filed a complaint in United States District Court alleging diversity of citizenship and that requiring continued operation of the trains at an out-of-pocket loss amounted to a confiscation of its property in violation of the Due Process clause of the Fourteenth Amendment. The District Court held the order of the Commission void and enjoined it from taking any steps to enforce its order to keep the trains operating or from enforcing any of the statutory penalty provisions because the trains were discontinued. The Commission appealed to the United States Supreme Court.

The cause was heard in that court on the merits, but one of the questions argued there was the authority of state courts to grant a supersedeas pending the final determination of the matter. At that time, Southern took the position that the state courts did not have the authority, and the Commission argued that they did have such authority. The judgment of the District Court was reversed. Alabama Public Service Commission v. Southern Railway Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002.

Southern agrees that the contrary position taken by the Commission now to the one taken then creates no estoppel under our holding in City of Birmingham v. Lee,

254 Ala. 237, 48 So.2d 47, since the Commission is a state-created agency. But it does contend that since the question is the same, the parties are in reality the same, and the United States Supreme Court has already decided the question, that a collateral estoppel arises to bar the Commission from relitigating the question.

We come now to a consideration of the opinion in 341 U.S. 341, 71 S.Ct. 762, 769. We understand that opinion to hold that even though the federal courts had jurisdiction, it "should not be exercised in this case as a matter of sound equitable discretion," and that whatever "rights appellee may have are to be pursued through the state courts." It is also our understanding that the U. S. Supreme Court did not construe our statutes, or pass on the particular authority of a state court to grant a stay of an order of the Commission to continue to operate a train, but after citing certain of our statutes and decisions merely stated that "appellee has not shown that the Alabama procedure for review of Commission orders is in any way inadequate to preserve for ultimate review in this Court any federal questions arising out of such orders."

It is our opinion that the opinion in 341 U.S. 341, 71 S.Ct. 762, is neither res judicata nor a collateral estoppel in the instant proceeding.

 That brings us to the main question—whether or not the Circuit Court of Montgomery County, in the exercise of its equity and statutory jurisdiction, had the power to supersede or stay the order of the Commission of July 8, 1957, pending final determination of the controversy.

This question is one of first impression in Alabama, and we are advised that there is no precedent for a railroad to discontinue the operation of passenger trains without a permit from the Commission or other regulatory body, prior to the determination of the merits in the case by a Supreme Court.

Our statute, Tit. 48, § 106, provides:

"No transportation company subject to this chapter shall abandon all or any portion of its service to the public or the operation of any of its lines, properties, or plant which would affect the service it is rendering the public, except ordinary discontinuances of service for nonpayment of charges, nonuser, violations of rules and regulations or similar reasons in the usual course of business, unless and until there shall first have been filed an application for a permit to abandon service and obtained from the commission a permit allowing such abandonment."

The constitutionality of this section was upheld in St. Louis-San Francisco Ry. Co. v. Alabama Public Service Commission, 279 U.S. 560, 49 S.Ct. 383, 73 L.Ed. 843.

The Commission has refused to issue Southern the permit to abandon service. The case on the merits was considered by the circuit court and has been appealed to this court. The certificate of appeal is here and the transcript has been filed, but it has not yet been submitted. The order of the circuit court granting supersedeas must fall unless there is some authority to justify its issuance.

The order of the Commission is prima facie just and reasonable. This rule is both statutory and case law. As stated in our recent case of Railway Express Agency, Inc., v. Alabama Public Service Commission, 265 Ala. 369, 91 So.2d 489, 494:

"The order of the Public Service Commission on appeal to this court is taken as prima facie just and reasonable, and the finding of the Commission will not be overturned if supported by legal evidence of substantial weight and probative force. Section 82, Title 48, Code 1940; North Alabama Motor Express, Inc., v. Rookis, supra [244 Ala. 137, 12 So.2d 183]; Alabama Public Service Com-

mission v. Crow, 247 Ala. 120, 22 So. 2d 721; Alabama Public Service Commission v. Nunis, 252 Ala. 30, 39 So. 2d 409; Alabama Public Service Commission v. Higginbotham, 256 Ala. 621, 56 So.2d 401."

The Constitution of Alabama of 1901, in Sec. 242, classifies railroads as public highways and states that they are common carriers. In Sec. 243, the power to regulate railroads is conferred upon the Legislature.

■ The Legislature in turn has created the Alabama Public Service Commission to handle the regulation of utilities and common carriers, including railroads. Tit. 48, §§ 1–78. The Legislature provided for appeals from orders of the Commission to the circuit court and thence to this court. Tit. 48, §§ 79–93. The Commission was not known at common law and any appeal from any of its orders is strictly statutory. In Birmingham Electric Co. v. Alabama Public Service Comm., 254 Ala. 119, 47 So. 2d 449, 452, we said:

"* * * It is familiar law that when special statutory authority in derogation of the common law is conferred on courts of general jurisdiction, such a court of general jurisdiction becomes *quoad hoc* a court of inferior or limited jurisdiction. State v. Mobile & G. R. Co., 108 Ala. 29, 18 So. 801; Goodwater Warehouse Co. v. Street, 137 Ala. 621, 34 So. 903; Gunn v. Howell, 27 Ala. 663, 62 Am.Dec. 785; Martin v. Martin, 173 Ala. 106, 55 So. 632; Ex parte Pearson, 241 Ala. 467, 3 So.2d 5; Truett v. Woodham, 98 Ala. 604, 13 So. 519.

" 'With respect to the judicial acts of courts exercising special and limited jurisdiction, the existence of jurisdictional facts is not inferred from the mere exercise of jurisdiction, but must affirmatively appear from the record. Goodwater Warehouse Co. v. Street, 137 Ala. 621, 625, 34 So. 903, and authorities there cited. In such

cases "a compliance with the requisitions of the statute is necessary to its jurisdiction, and must appear on the face of its proceedings."—State v. Mobile & G. R. Co., supra, [108 Ala. 29, 18 So. 801]. It follows, as of course, that such jurisdiction cannot be obtained or conferred by the proclamation thereof, positively or by invited necessary inference, in the order or decree of a court assuming to exercise a limited special authority.—Neville v. Kenney, 125 Ala. 149, 28 So. 452, 82 Am.St.Rep. 230; Pollard v. Hanrick, 74 Ala. 334.' Martin v. Martin, 173 Ala. 106, 55 So. 632, 633."

Thus, we must look to the statute for the court's authority to stay the order of the Commission. The pertinent statute is Tit. 48, § 81, which provides:

"On any such appeal any utility, interested party, or intervenor may supersede any decree rendered by giving such supersedeas bond or bonds as may be appropriate to the proceedings *as provided for herein for superseding an order or orders of the commission.*"

The determinative words of the section are those which we have emphasized. The sections "as provided for herein for superseding an order or orders of the commission" clearly pertain to orders having to do with "rates, fares or charges," and do not refer to an order of the Commission refusing a permit to abandon service. It is clear that § 81 does not apply to § 106.

We think there is a vast difference between the two types of orders. The matter of "rates, fares or charges" affects the very life blood of a utility or common carrier. The railroad could be irreparably injured, if not destroyed, if compelled to await a final judicial determination of an unfair, unreasonable or arbitrary order of the Commission relating to "rates, fares and charges." It has been held *in rate cases* that a utility could seek injunctive relief in federal courts under the Due Process

clause of the Fourteenth Amendment where the right to supersede the order of a commission or board is not available, Pacific Telephone & Telegraph Co. v. Kuykendall, 265 U.S. 196, 44 S.Ct. 553, 68 L. Ed. 975, and where supersedeas was sought but denied by the state court, Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659. Not only do our statutes provide for a supersedeas of the orders of the Commission as to "rates, fares or charges," Tit. 48, §§ 79–93, but we have held that our statutes afford due process under the Fourteenth Amendment. Alabama Public Service Commission v. Mobile Gas Co., 213 Ala. 50, 104 So. 538, 41 A.L.R. 872.

But the abandonment of its service, in whole or in part, can only be effected by a permit from the Commission. Tit. 48, § 106. In State v. Western Union Telegraph Co., 208 Ala. 228, 94 So. 466, 467, this court said:

"* * * It is established by the decisions that a public service corporation, organized to do a business affected with a public interest, and having held itself out to the public as being willing, able, and equipped to serve all members of the public on proper and reasonable terms and conditions (Birmingham Ry. Light & Power Co. v. Littleton, 201 Ala. 141, 145, 77 So. 565) may not, without the consent of the state, by its voluntary act, deprive itself of its franchise and facility, disabling it in performing the function which was the condition for the public grant. Northern Alabama R. v. Guttery, 189 Ala. 604, 66 So. 580; American Lumber Co. v. Tombigbee, etc., Co., 154 Ala. 385, 45 So. 911; Ricketts v. Birmingham, etc., Co., 85 Ala. 600, 5 So. 353. Such corporations may not, without the consent of the state, abrogate the performance of their duties to the public, imposed by their charter as the consideration for the grant of their franchises." (Citing cases.)

In that same opinion, we quoted from Gates v. Boston & N. Y. A. L. R. Co., 53 Conn. 333, 5 A. 695, in part, as follows:

"'The possible effects of the exercise of such a claimed power are utter disaster to the great interests of the state, certain destruction of private property in which whole communities created and existing upon the faith of the continuous use of the chartered· powers are interested, and, indeed, the life of the citizen as well as his property rights, are thus jeopardized. Upon principle it would seem plain that railroad property once devoted and essential to public use, must remain pledged to that use, so as to carry to full completion the purpose of its creation; and that this public right, existing by reason of the public exigency, demanded by the occasion, and created by the exercise by a private person of the powers of a state, is superior to the property rights of corporations, stockholders and bondholders. To this effect also is the weight of authority.'"

We have been cited to no case in any jurisdiction which would permit Southern to discontinue the train service under the circumstances prevailing in the instant case.

Southern argues that it will suffer irreparable injury because it is incurring losses of $200,000 per year in the operation of the trains. But that item is not of paramount importance. The United States Supreme Court, in 341 U.S. 341, 71 S.Ct. 762, 767, 95 L.Ed. 1002, made the following comment in reference to such contentions:

"* * * We do note that in passing upon similar contentions in the past, this Court has recognized that review of an order requiring performance of a particular utility service, even at a pecuniary loss, is subject to considerations quite different from those involved when the return on

the entire intrastate operations of a utility is drawn into question. Atlantic Coast Line R. Co. v. North Carolina Corporation Commission, 1907, 206 U.S. 1, 24–27, 27 S.Ct. 585, 593, 595, 51 L.Ed. 933. The problems raised by the discontinuance of trains Nos. 7 and 8 cannot be resolved alone by reference to appellee's loss in their operation but depend more upon the predominantly local factor of public need for the service rendered. Chesapeake & Ohio R. Co. v. Public Service Commission of West Virginia, 1917, 242 U.S. 603, 608, 37 S.Ct. 234, 61 L.Ed. 520."

In cases involving "rates, fares or charges," the service continues without interruption while the legal question is being determined in the courts. But a discontinuance of train service pending a determination of that question in the courts, interrupts passenger, mail and express service which the public along the railroad has used, expected and relied upon for many years. Even if this court should finally order service restored, it is evident that the status quo would not be restored, because it would have been mandatory upon the general public to avail themselves of other types of service during the discontinuance. Furthermore, there is no evidence before us in this proceeding as to the relation of the pecuniary loss of this particular service to the return on the entire operations of Southern. These are matters which will be carefully considered when the cause comes before us on its merits, but we are not prepared to say that the circuit court had the authority to order the abandonment of service in the teeth of Tit. 48, § 106, pending the final determination of the cause in this court on its merits.

█ It is manifest that the statute under construction is of doubtful interpretation, and it is axiomatic that in such a case the court will place upon the statute that construction which is reasonable and just, which we think we have done in this case. It is also to be observed that this opinion, of course, is limited in effect to the single question here posed.

Finally, Southern argues that should we reach the conclusion which we have, it "will make intervention by the federal courts in the action of state agencies mandatory." We recognize that the intrastate operation of railroads is a local problem, and as expressed in 341 U.S. 341, 71 S.Ct. 762, it is "primarily the concern of the state." We are not convinced that the opinion of the United States Supreme Court in 341 U.S. 341, 71 S.Ct. 762, 766, means or holds that the federal courts would exercise the jurisdiction which was refused in that case even after we hold that the circuit court could not grant a supersedeas so as to permit Southern to discontinue its trains. That, of course, is conjecture.

But even if we knew that we were sending the railroads to the federal courts for relief, our decision would be the same. The Legislature has the power to provide for a supersedeas in connection with Tit. 48, § 106 if it so desires. As much as we recognize that the local problem is better handled by state courts, even more do we recognize the need for judicial restraint on the part of courts not to legislate merely to satisfy personal whims, ideas or beliefs. We have decided this matter under the law as it exists, not as we might prefer it to be.

It follows that the lower court should have dismissed that part of the motion for rehearing dealing with supersedeas because the Circuit Court of Montgomery County, in Equity, lacked jurisdiction, and unless that court vacates the order upon being advised of this ruling, the peremptory writ of mandamus will be issued.

Writ awarded conditionally.

All the Justices concur.