BEATTY, Justice.
This is an appeal by the defendants from circuit court orders dealing with a change in the form of government of the City of Jasper. We reverse and remand.
On March 8, 1946, the City of Jasper began operating under the commission form of government and has continued under that form. This controversy arose out of a special election held on June 23, 1981, in which that city’s electorate voted to abandon the commission form in favor of the mayor-council form of municipal government. Without detailing the process of pleading and hearings in this action, it is sufficient to state that the trial court held that an election to select municipal officers be held in the City of Jasper on the second Tuesday in July 1982. Following an appropriate motion and a hearing in this Court, the orders of the Circuit Court of Walker County were stayed on June 16,1982, pending this appeal. Subsequently, the record on appeal and the briefs of the parties were filed and the case has been submitted for decision on briefs.
The basic question presented concerns the time when the election of the mayor and council shall be held following a change to that form of government from the commission form. All parties concede that this issue is governed solely by the intention of the legislature, the difference between them being the process through which that intention is discerned.
That position on legislative intention is well established in this state, for cities exercise only such power as is conferred upon them by law, Alexander v. State ex rel. Carver, 274 Ala. 441, 150 So.2d 204 (1963), legislative sanction being indispensable to their existence, New Orleans, Mobile & Chattanooga R. Co. v. Dunn, 51 Ala. 128 (1874), and to their authority. City of Mobile v. Mobile L. & R. Co., 141 Ala. 442, 38 So. 127 (1904). Indeed, the power of the legislature under the state Constitution is supreme in prescribing the powers and duties of municipalities. Trailway Oil Co. v. City of Mobile, 271 Ala. 218, 122 So.2d 757 (1960).
The plaintiffs maintain that the first election of new municipal officials was due to be held in July 1982 (approximately one year following the abandonment of the commission form) and that those elected at that time would hold officé until the 1984 quadrennial election when another election would be held at that time to select the mayor and council for the next four years. Plaintiffs reach this result by a scholarly historical consideration of municipal statutes on the subject of elections reaching back to the 1907 Code. Their principal argument centers around the existence of Code of Ala.1975, § 11—44-15, which, they contend, did not exist in the statutes previously, was not enacted by the legislature by any single Act but was enacted as part of the whole Code, and the presence of which makes the election process ambiguous. Plaintiffs’ argument continues by asserting that §§ 11-44-155, 11-44-156 and 11-40-11 must be construed against the historical backdrop of municipal election statutes which demonstrate a legislative intention to make the term “general municipal election” mean, in the context of a change like the one in question, that the officials are to be elected at the next regular municipal election, take office on the first Monday in October thereafter, and then hold office until the first Monday in October of the next quadrennium year when their successors would be elected. In other words, after the regular election to be held during *617 the year following the 1981 abandonment election, the next quadrennium election, to be held in 1984, would select the mayor and aldermen for the first four-year terms.
It is true, as plaintiffs maintain, that the language of § 11-44-156 of the Code of 1975, which cites Acts 1915, No. 699, p. 770, as its parent authority, does not conform to the language of the original 1915 Act, the latter having been changed. Indeed, the original 1915 language states:
“Sec. 2. The Governor shall, within thirty days after receiving notice of the results of said election, appoint a mayor and the requisite number of aldermen who shall reside within the territorial limits of such city, and who shall possess the qualifications prescribed by law for such city, and who shall hold office thereafter until their successors are elected and qualified in the manner now or hereafter prescribed by law, and such officers so appointed shall hold office until the next regular election and until their successors are qualified.” (Emphasis added.)
This language was substantially carried over into the Ala.Code of 1940 (Recomp.1958) as Tit. 37, § 126. The salient differences in the legislative language lie in the process of selecting the first mayor and aldermen. The present section, § 11-44-156, removed the governor as the selecting authority but the language was changed to “next general municipal election after an election approving the abandonment of the commission form.” (Emphasis added.)
As the plaintiffs point out, historically the statutes governing municipal elections have used different terms to describe those elections, sometimes referring to “regular” municipal elections, and at other times to “general” elections. Cf. §§ 1063, 1064 and 1065 of the Code of 1907. Section 1068 of that Code, for example, called for the election of the mayor and aldermen “at the general election to be held on the third Monday in September 1908 and biennally thereafter.” The use of such terms was carried into the Code of 1923 in §§ 1754, 1757, 1758 and 1760. It should be noted, however, that these sections did not expressly pertain to the election process following a change from the commission form. It is also interesting to note that, following an election opting for the commission form of government, the Code of 1923, § 2341 provided for gubernatorial appointment of three commissioners with staggered terms: “one to hold office for a term from the date of his appointment and qualification until the first Monday in October of the year next succeeding his appointment,” etc. This procedure apparently conformed to the provisions of Code of 1923, § 2364 governing the election of commissioners which was that:
“[a]n election shall be held on the third Monday in September of the year next succeeding the year in which this article was adopted, and on the same date of every succeeding year for the member of the board of commissioners whose terms shall expire in that year, the commissioner then elected shall hold office for a term of three years from the first Monday in October of said year and until his successor shall be elected.... ” (Emphasis added.)
These statutes indicated a legislative intent to select the new commissioners without delay. Section 27 of the Alabama Code of 1940 prescribed “regular municipal elections” for “the third Monday in September, 1940, and quadrennially thereafter.” Respecting the adoption of the commission form of government, section 41 of the 1940 Code states that the terms of new commissioners elected thereunder “shall commence immediately upon their election,” and they are to hold office
“until the first Monday in October of the third year following ... and an election shall be held on the third Monday in September of the year preceding the expiration of the term of office of the three commissioners, at which election three commissioners shall be elected for a period of one, two and three years, respectively. ...”
(Emphasis added.).
From this background we direct our attention to the presently existing legislative *618 enactments which pertain to changes in the form of municipal government. Code of Ala.1975, §§ 11-44-1 through 11-44-162 concern the commission form of government. Article 4 of that chapter deals with the subject of abandonment, and § 11-44-155 thereof recites:
“The election thereupon shall be conducted, the vote canvassed and the result declared in the manner now provided by law for other municipal elections, and if the majority of the votes cast shall be in favor of such proposition, then the provisions of the general municipal law with respect to the aldermanic form of government shall become effective October 1 of the general municipal election year next following said election, and the president of the board of commissioners of said city or town shall transmit to the governor of Alabama, to the secretary of state and to the judge of probate of the county, each, a certificate stating that such proposition was adopted by said city or town.” (Emphasis added.)
This statute is followed by an enactment relating to mayors and aldermen, § 11-44-156:
“At the next general municipal election after an election approving the abandonment of the commission form of government, there shall be elected a mayor and the requisite number of aldermen in accordance with the general municipal law under which the city or town will be organized upon the effective date of the abandonment of the commission form of government.” (Emphasis added.)
The significant language in this section likewise refers to “the next general municipal election after an election approving the abandonment of the commission form of government.”
Code of Ala.1975, § 11-40-11, refers specifically to the time when the change in the form of government takes effect:
“No change from the commission form of municipal government to the mayor-council form of municipal government hereafter directed by vote of the electors of any municipality in this state shall become effective until October 1 of the general municipal election year next following the election at which such change is voted. The term of any commissioner which might expire before such date is hereby extended until such date when the form of government changes.” (Emphasis added.)
The question thus presents itself: What is meant by the clause “shall [not] become effective until October 1 of the general municipal election year next following the election at which such change is voted”? E.g., Connor v. State ex rel. Boutwell, 275 Ala. 230, 153 So.2d 787 (1963). To ascertain that answer we must take note that by Acts 1961, No. 663, p. 827, § 2; Acts 1971, No. 159, p. 434, now Code of Ala.1975, § 11-46-21, the legislature specifically declared that:
“(a) The regular municipal elections in cities and towns shall be held on the second Tuesday in August 1964, and quadrennially thereafter....

“(c) Municipal officers elected at regular elections shall assume the duties of their respective offices on the first Monday in October following their election unless otherwise provided in this article.”
This section presently appears in slightly modified form in the 1982 Cumulative Supplement:
“(a) The regular municipal elections in cities and towns shall be held on the second Tuesday in July 1980, and quad-rennially thereafter....

(c) Municipal officers elected at regular elections shall assume the duties of their respective offices on the first Monday in October following their election unless otherwise provided in this article and shall serve until their successors are elected and qualified. (Acts 1961, No. 663, p. 827, § 2; Acts 1971, No. 159, p. 434; Acts 1980, No. 80-94, p. 140, § 1; Acts 1982, No. 82-458, § 2.)”
The legislature has also enacted § 11-43-2 (Acts of 1980, No. 80-94, p. 140, § 1) which pertains to the election of mayors and aldermen:
*619 “In all cities and towns at the general election to be held on the second Tuesday in July, 1980, and quadrennially thereafter, there shall be elected a mayor....

“The aldermen in such cities or towns shall be elected by the city or town at large at the first general election held on the second Tuesday in July, 1980, and quadrennially thereafter....” (Emphasis added.)
This statute appears in the chapter of Code of Ala.1975 dealing with the general governance by the mayor-council form, and not to the changeover to that form from the commission form. Nevertheless its specific terms on the date for the general election conform to those contained in the 1982 Supplement as § 11-46-21. The immediate predecessor to the current version of § 11-43-2 likewise conforms in terms on those dates to the immediate predecessor statute of the present § 11-46-21. In spite of the historical legislative use of “regular” elections and “general” elections, plaintiffs do not attribute to that varying usage any legal significance in the immediate framework within which we must be concerned in this case. Rejecting any significant difference, the plaintiffs urge that by enacting § 11-44H56, the legislature doubtless intended to adopt a procedure which would select the new municipal governing body at the first “regular” or “general” election routinely held following the change of the form of municipal government, which they insist would occur in July of the year following the changeover, with those elected taking office on the first Monday in October following. This follows, the plaintiffs contend, from a consideration of the history and contemporary body of municipal law pertaining to the subject of municipal elections.
We are, of course, bound not to substitute our own philosophy of government for the prerogative of the legislature in such matters. Our responsibility is solely to determine the legislative will, and our duty is to give effect to it. Champion v. McLean, 266 Ala. 103, 95 So.2d 82 (1957). Sometimes it is necessary to ascertain that will by construction, as when the language used is ambiguous and thus the legislative intent is unclear, requiring explanation. Ex parte Alabama Public Service Commission, 268 Ala. 322, 106 So.2d 158 (1958). When such an ambiguity exists and construction is called for, the purpose and object of the enactment, as well as the language used, may be examined. McWhorter v. State Board of Registration for Professional Engineers and Land Surveyors ex rel. Baxley, 359 So.2d 769 (Ala.1978). When no such ambiguity exists, however, but the statutory language is clear and unambiguous, it is not necessary to resort to such purposes or objects, or to legislative history, in order to find the intent of that body. Town of Loxley v. Rosinton Water, Sewer and Fire Protection Authority, Inc., 376 So.2d 705 (Ala.1979). In that case the legislative purpose lies in the clearly expressed legislative language and must be given effect without any attempt at judicial improvement. Fletcher v. Tuscaloosa Federal Sav. & Loan Ass’n, 294 Ala. 173, 314 So.2d 51 (1975); League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). See also Drake v. Pennsylvania Threshermen & Farmers Mut. Cas. Ins. Co., 265 Ala. 444, 92 So.2d 11 (1957).
We have carefully reviewed the development of the law of municipal elections as explained by the plaintiffs. We have especially noted their argument concerning the presence in the 1975 Code of § 11-44-156, referred to earlier, and their criticism of that section as being foreign to the 1915 Act, to § 2400 of the Code of 1923, and to Tit. 37, § 126 of the Alabama Code of 1940. We are mindful of plaintiffs’ observance that:
“[I]t is difficult to perceive of the Legislature intending to mean that on change from the Commission form to the Mayor-Council form the new officers to serve the incoming Mayor-Council form would not be elected until a quadrennium election next occurring after the citizens of Jasper voted nearly four years in advance of the quadrennium to change from Commission to Mayor-Council form of government. ...”
It appears, in contradistinction, however, that such a result was precisely what the *620 legislature intended in the exercise of what is clearly a legislative prerogative. Indeed, the clear legislative pattern which has emerged from the earlier plans has been to set general or regular elections, those for which the law fixes a time, McAdams v. Ne Smith, 252 Ala. 178, 40 So.2d 84 (1949), by date. Thus, at least since 1961 whenever a municipal election statute has referred to the holding of a “regular municipal election,” that clause has been legislatively determined as either the “second Tuesday in August 1964, and quadrennially thereafter,” or on the “second Tuesday in July 1980, and quadrennially thereafter.” Because the abandonment of the commission form and the assumption of the aldermanic form was to become “effective October 1 of the general municipal election year next following said election,” the legislature intended that the election of city officials and their assumption of office be held, if held after July 1980, in the quadrennial year following 1980, i.e. the election of officials to be held on the second Tuesday in July 1984, and those elected to take office on October 1, 1984, which is the same date when the new form of government takes effect. Moreover, in its wisdom the legislature has through § 11-40-11 expressly made the “term of any commissioner which might expire before such date ... extended until such date when the form of government changes.” Under this latter portion of § 11-40-11, then, the legislature has affirmatively directed the result which, plaintiffs argue, could not have been intended.
It follows from what we have stated that the trial court was in error when it ordered that an election be held in the City of Jasper on the second Tuesday in July 1982 to elect a mayor and aldermen, and that those officers thereby elected take office on the first Monday in October following their election. For the reasons we have stated, that order is reversed and this cause is remanded for an order not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.