The problem presented in these cases centers around the proper construction of Ala. Code 1975, § 23-1-273(5), which is part of the Alabama Highway Beautification Act, § 23-1-270 et seq. The pertinent portion of § 23-1-273 states:
 "No sign shall . . . be erected or maintained in an adjacent area after February 10, 1972, . . . except the following:
 "(5) . . . [S]igns to be erected in business areas subsequent to February 10, 1972, which when erected, will comply with the provisions of Section 23-1-274. . . ."
(Emphasis added.) The first portion of § 23-1-271(1) of the Alabama Highway Beautification Act defines the term "business area" to mean "[a]ny part of an adjacent area which is at any time zoned for business, industrial or commercial activities under the authority of any law of this state." Subsection (4) of § 23-1-271 defines "adjacent area" as "[a]n area which is adjacent to and within 660 feet of the nearest edge of the right-of-way of any interstate or primary highway."
The signs in question were erected after February 10, 1972, and were erected in areas zoned "agricultural" by local zoning authorities. The issue on appeal is whether, for purposes of applying § 23-1-273(5), part of the Alabama Highway Beautification Act, the phrase "area . . . zoned for business . . . activities,"[4] appearing in the statutory definition of "business area," was intended to include within the scope of its meaning areas zoned for agricultural use.
"The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute." Clark v. Houston County Comm'n,507 So.2d 902, 903 (Ala. 1987). "If possible, the intent of the legislature should be gathered from the language of the statute itself." Clark, 507 So.2d at 903. "[W]here the language of a statute is clear and unambiguous and the meaning obvious, there is no room for construction, [and] the court will confine itself to the language as it is and not invade the legislative realm by imposing . . . a . . . different meaning." Departmentof Industrial Relations v. Little Mfg. Co., 253 Ala. 416, 418,44 So.2d 587, 589 (1950).
I have my doubts as to whether one can glean a plain meaning from the phrase "area . . . zoned for business . . . activities." The zoning ordinances in question, while they create "commercial" zoning districts and "industrial" zoning districts, do not use the term "business" to describe any of the types of zones created under those ordinances. The petitioners correctly point out that the line between business activities and agricultural activities, if it ever truly existed, is continually being ever more blurred by the modern growth of agribusiness. Furthermore, the definition of the term "business" is very broad. For example, "business" is defined byBlack's Law Dictionary (6th ed. 1990), as "employment, occupation, profession, or commercial activity engaged in for gain or livelihood. Activity or enterprise for gain, benefit, advantage or livelihood." It is possible to make a very good argument that agriculture could come within the commonly understood meaning of the term "business activity."
But even if the phrase "area . . . zoned for business . . . activities" is ambiguous, I am forced to agree with the majority's conclusion that agriculturally zoned areas were not intended to be included within the meaning of the phrase in question in the context of interpreting § 23-1-273(5), part of the Alabama Highway Beautification Act. It has long been established that when faced with a statute of "doubtful interpretation" this Court" will place upon the statute that construction which is reasonable and just." Ex parte *Page 1261 Alabama Public Service Comm'n, 268 Ala. 322, 328,106 So.2d 158, 163 (1958). After considering the Alabama Highway Beautification Act as a whole, and especially the legislature's findings set out in that Act (see § 23-1-272), I am convinced that the construction the majority has given the phrase "area . . . zoned for business . . . activities" is the only reasonable construction that can be given the phrase in this context.
The Alabama Highway Beautification Act was clearly intended to reduce the prevalence of outdoor advertising, especially in the more rural and scenic portions of our state. It resulted from an obvious attempt to balance the economic interests of businesses seeking to advertise and the outdoor advertising businesses that help to meet those advertising needs against the aesthetic and safety interests of Alabama's citizens and those who visit Alabama. In § 23-1-272 the legislature set forth its findings, acknowledging in subsection (1) that "outdoor advertising is a legitimate commercial use of private property adjacent to roads and highways" and in subsection (3) that "outdoor advertising is an integral part of the business and marketing function . . . and should be allowed to operate in business areas," while at the same time recognizing in subsection (2) that outdoor advertising "should be regulated inorder to protect the public investment in . . . highways, topromote the recreational value of public travel, to preservenatural beauty and to promote the reasonable, orderly and effective display of such signs." (Emphasis added.) By restricting outdoor advertising principally to commercially developed and more urban areas of our state, the legislature struck an almost perfect compromise that benefits both advertisers and those interested in preserving Alabama's natural beauty.[5]
Outdoor advertising is obviously most effective in more congested areas where a greater number of motorists pass daily and where lower speed limits and intermittent stop lights enable those motorists — who, as consumers, are the persons at whom the signs are directed — to notice billboards much more easily than on high-speed stretches of highway in undeveloped areas. At the same time, the addition of such signs to already commercially developed areas does not affect the natural beauty the legislature was intending to protect. The addition of outdoor advertising to agriculturally zoned areas would clearly run counter to the purposes behind the enactment of the Alabama Highway Beautification Act, and counter to the regulatory scheme created by that Act.
MADDOX, J., concurs.
[4] No one argues that areas zoned for "agriculture" should be considered as areas "zoned for . . . industrial or commercial activities"; therefore, I will discuss only whether the term "area . . . zoned for business . . . activities" includes within its meaning an area zoned for agriculture.
[5] This intent is clear from looking at the Act as a whole, especially considering the method in which the legislature sought to regulate outdoor advertising in rural areas not yet zoned. Such signs can be placed only in those areas on "land occupied by the regularly used building, parking lot, storage or processing area of a commercial, business or industrial activity." Ala. Code 1975, § 23-1-271(10). See Hawley Fuel Corp.v. Burgess Mining Construction Corp., 291 Ala. 546, 548,283 So.2d 603, 605 (1973) ("When construing a statute this court must look to the context, spirit, and the whole, to reach the true intent of the legislature.").