85 So.2d 890

**STATE of Alabama**

v.

**BAY TOWING AND DREDGING CO., Inc.**

**I Div. 649.**

Supreme Court of Alabama.

Dec. 22, 1955.

Rehearing Denied March 22, 1956.

**188**

John Patterson, Atty. Gen., and Willard W. Livingston, Jas. R. Payne and Wm. H. Burton, Jr., Asst. Attys. Gen., for appellant.

Vickers & Thornton, Mobile, for appellee.

Burr, McKamy, Moore & Thomas and Frontis H. Moore, Birmingham, amici curiae.

MERRILL, Justice.

The taxpayer, appellee here and appellant below, took an appeal to the Circut Court of Mobile County, in Equity, from a final assessment of sales tax pursuant to the provisions of Title 51, Sec. 140, Code of 1940. From a decree in favor of the taxpayer, the State of Alabama appeals.

The agreed statement of facts shows that the taxpayer is engaged in the business of dredging dead oyster shells from beneath Mobile Bay and selling and delivering said shells. It used six tugs or tugboats to tow barges in Mobile Bay and elsewhere. The assessment by the State Department of Revenue was for sales tax on purchases in Alabama of fuel and supplies used or consumed aboard each such tug. Three of the tugs operated only within the territorial waters of the State of Alabama, principally in Mobile Bay, and the assessment was paid as to them. But the taxpayer appealed from the assessment on the fuel and supplies used on the other three tugs, because they towed barges from Mobile westward as far as Baton Rouge, Louisiana, and easterly to Carrabelle, Florida over the route of the Intracoastal Waterway.

The taxpayer claims that it is exempt from the tax on the fuel and supplies consumed aboard these latter three tugs under the provisions of Code 1940, Title 51, Sec. 755(r) as amended, which reads in part:

"There are however exempted from the provisions of this article and from the computation of the amount of the tax levied, assessed or payable under this article the following: * * * (r) The gross proceeds from the sale or sales of fuel and supplies for use or consumption aboard ships plying on the high seas either in intercoastal trade between ports in the State of Alabama and ports in other states of the United States or its possessions or in foreign commerce between ports in the State of Alabama and ports in foreign countries."

The question for our determination is the proper construction of the phrase "ships plying on the high seas".

Without going into various and technical definitions, we hold that the word

"ships" as used in this statute includes the tugs or tugboats used by the taxpayer here. See 39 Words and Phrases, Ship, p. 255.

The real question is to determine what the legislature meant by the use of the term "high seas".

The dictionary (Webster—as quoted in United States v. Rodgers, 150 U.S. 249, 14 S.Ct. 109, 117, 37 L.Ed. 1071) definition is: "'high seas, (law,) the open sea; the part of the ocean not in the territorial waters of any particular sovereignty, usually distant three miles or more from the coast line.'"

The Congress of the United States has recognized a distinction between the high seas and inland waterways. In 33 U.S.C.A. § 151 we find: "Demarcation of high seas lines. The Secretary of Commerce is hereby authorized, empowered and directed from time to time to designate and define * * * the lines dividing the high seas from rivers, harbors and inland waters." And in subsection (12) of 46 U.S.C.A. § 224a, we read: "the term 'high seas' means all the waters outside the line dividing the inland waters from the high seas, as defined in section 151 of Title 33".

Also in 46 U.S.C.A. § 88 we find: "* * * By 'coastwise voyage by sea' is meant a voyage on which a vessel in the usual course of her employment proceeds from one port or place in the United States or her possessions to another port or place in the United States or her possessions and passes outside the line dividing inland waters from the high seas, as defined in section 151 of Title 33."

The entire Intracoastal Waterway here involved is routed through bays, canals, rivers, or sounds and is protected by the mainland or rows of islands from the open gulf. True, there are straits or passes between the ends of the islands, viz., Dauphin Island and Petit Bois Island, but the waterway is still within sheltered or protected waters.

In our case of State v. Thames, Jackson, Harris Co., 259 Ala. 471, 66 So.2d 733, 735, we quoted from several cases relative to rules of construction of taxing statutes. Without again citing the cases there mentioned, we refer to the rules that (1) taxation is the rule and exemption the exception, and exemptions ought not to be deduced from language of doubtful import; (2) "'"Courts can only learn what Legislature intended by what it has said, and have no right to stray into mazes of conjecture or search for an imaginary purpose, in construing statute"'"; and (3) the general rule where the language of the Statute is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction.

If the legislature had intended to exempt these tugs and similar craft from the provisions of the sales tax it could have simply omitted "plying on the high seas" leaving the statute to read "* * * aboard ships either in intercoastal trade between ports in the State of Alabama and ports in other states * * *" etc. It requires no strained construction to say that the legislature meant ships "plying on the high seas" when it inserted that phrase into the statute; and we are clear to the conclusion that "high seas" does not include inland waters of a state or that part of the Intracoastal Waterway between the Mississippi River and Carrabelle, Florida.

The decree of the lower court is reversed and the cause is remanded with directions to that court to enter a decree denying the relief sought by the appellant in that court, the appellee here.

Reversed and remanded with directions.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.