137 So.2d 53

**W. W. KLEMME, Jr.**

v.

**STATE of Alabama.**

**7 Div. 560.**

Supreme Court of Alabama.

Jan. 18, 1962.

174

MacDonald Gallion, Atty. Gen., and Wm. H. Burton, Asst. Atty. Gen., for appellee.

Knox, Jones, Woolf & Merrill, Anniston, for appellant.

STAKELY, Justice.

This is an appeal from a decree entered in the Circuit Court of Calhoun County, Alabama, in Equity in which the appellant was adjudged liable for payment of a license tax as a person engaged in the practice of chemistry under the provisions of Section 552, Title 51, Code of 1940. We set out the pertinent portion of Section 552 as follows:

"Each person engaged in the practice of medicine, chemistry, bacteriology, roentgenology, or other similar profession, except chemists, bacteriologists and roentgenologists employed full-time by physicians and hospitals shall pay an annual license, in cities or towns of over five thousand inhabitants—twenty-five dollars. One

thousand to five thousand—ten dollars. All other places whether incorporated or not—five dollars; but no license shall be paid to the county. If such business is conducted as a firm or as a corporation in which more than one person is engaged, each person so engaged shall pay the license as above stated. * * *"

The only assignments of error are directed to the correctness of the decree of the trial court based on all of the evidence introduced at the trial. There were only three witnesses. The testimony of W. R. Richards in brief is as follows:

He is an inspector for the State Department of Revenue stationed in Calhoun County and he has held this position since 1956. In 1960 he issued a citation to Mr. Klemme for failure to obtain a license under Section 552 of Title 51 for the two fiscal years commencing October 1, 1958 through September 30, 1960. This citation was issued when the plant manager told Mr. Richards that Mr. Klemme was employed as a chemist. Mr. Richards made no inspection of the work done by Mr. Klemme or the facilities at the Monsanto plant.

Prior to 1960 Mr. Richards had never issued any citations to industrial employees for failure to obtain a chemist's license. The matter arose in April 1960 when he was studying his handbook and saw that chemists were named along with doctors in Section 552. It then occurred to him that some of the industrial plants might have employees performing some chemical work and he proceeded to issue the citations without any request from or communication with the State Department of Revenue.

The testimony of Robert C. Roton shows that he is the supervisor of the license section of the Motor Vehicle Division of the State Department of Revenue. In 1956 he received a ruling from the State Department of Revenue which held among other things that chemists employed by Southern Research Institute were liable for the license under Section 552 of Title 51.

The testimony of the appellant was in substance as follows:

I graduated from the University of Delaware where I got a Bachelor of Science degree. I majored in chemistry in doing so. I am a member of the American Chemical Society. I have never written any articles or treatise on chemistry for the American Chemical Society or anybody else. I was transferred to the Monsanto Chemical Plant here in 1958. To the best of my knowledge I am classified as Chief Chemist. My duties were almost strictly administrative. My duties were to assign work duties to the people working for me, to hire and fire personnel, to oversee the laboratory, to check the quality of analyses performed in the laboratory, to watch after the safety of the people working directly under me, and any other administrative duties which might come up on the job from day to day.

Monsanto is a chemical company and is engaged in the production of chemicals for sale "to be used in other uses". I went immediately into the field of chemistry after my graduation. I went with the Hercules Powder Company and immediately into the chemical field and was later transferred to Monsanto Chemical Co. There analyses are performed on raw materials, in process goods and finished goods. While we do not have test tubes we have beakers and other laboratory equipment. While the laboratory performs chemical analyses I myself do not. I supervise that work. The people under my supervision are not listed as chemists. They are listed on the payroll as analysts. They analyze raw materials and other materials and in doing so use the usual chemical tests.

In answer to the court's question as to his definition of a chemist, Mr. Klemme said:

"I would say a chemist is one who has been given the advantage of a higher education, going to college, and has

pursued the curriculum in chemistry, In other words, majored in chemistry and has graduated from school and, after graduation, has found employment following the training he has in the university or college."

In my employment I have made use of my training.

As chief chemist I supervise these analysts. I check the quality of the men that work with me in the laboratory in the following manner:

"Their analytical work is put on tickets, laboratory tickets as we call them; at the end of each shift they turn these tickets in, put them on my desk, and, at the end of each day, I take all the tickets and check them over to see if there is anything out of line, and if so, if samples are still available, I have a recheck."

As chief chemist at Monsanto I consider myself as following my profession as a chemist.

It will be noticed that the foregoing section of the Code does not require like some of the other privilege license tax statutes that the doctor or chemist, etc., hold himself out to the general public as such but it only requires that the person involved be engaged in the practice of medicine, chemistry, etc. for the license tax under Section 552 to apply. Webster's New International Dictionary, 2nd Edition, page 1937, the terms "practice" or "practicing" is defined "to engage in or perform". In 33 Words and Phrases, Practice 179 et seq., such terms are described as relating to one being actively engaged in a profession without any requirement being made that he hold himself out to the public as a whole as being engaged in such profession. See State v. Sellers, 30 Ala.App. 512, 9 So.2d 19, Cert. Den. 243 Ala. 118, 9 So.2d 20.

Prior to being amended in 1957 Section 552 of Title 51 read in material part as follows:

"Each person engaged in the practice of medicine, chemistry, bacteriology, roentgenology, or other similar profession, except chemists, bacterologists and roentgenologists employed full-time by physicians and hospitals shall pay an annual license * * *."

In 1957 amendment to Section 552 was enacted by the legislature after the State Department of Revenue had in 1956 issued a ruling concerning the application of the license tax levied under Section 552 to chemists working full time for the Southern Research Institute. The ruling is as follows:

"Mr. Murray's letter relates to the chemists who are employed by Southern Research Institute, a non-profit organization whose activities are devoted exclusively to scientific research and the related activities described by Mr. Murray. It is our understanding from his letter that these chemists devote their entire time to their work with the Institute and do not do any outside chemical work. Mr. Murray's question is whether or not these chemists could be said to be practicing their profession under the circumstances and subject to the license under Section 552, supra.

"In the first place, it might be well to state that there are no applicable exemptions contained in Chapter 20, Article 1 of Title 51, Code of Alabama 1940, some of which sections have been amended. Under this Article business, vocational and occupational licenses are levied on charitable, educational, or scientific institutions, and persons employed thereby, where they are carrying on any of the business or professions covered by such licenses. If any of the employees of such institution would be exempt from the provisions of these license taxes, then it would be through exemptions or other provisions expressly contained in these license statutes and applicable to all persons coming within such laws.

"Section 552 does contain certain exemptions. This license is said to apply to each person engaged in the practice of medicine, chemistry, bacteriology, roentgenology or other similar professions, except chemists, bacteriologists, and roentgenologists employed full time by physicians and hospitals. The chemists employed by the Southern Research obviously do not fall within this exemption as they are not employed by physicians or hospitals. Under the opinion of the Attorney General just cited and the case of State v. Sellers, supra, it would appear that these chemists would be said to be practicing the profession of chemistry, even though their full time is devoted to chemical work with Southern Research Institute. We also believe that their situation would be analogous to that of full time doctors employed by the Medical College who do not take any outside patients. Under the circumstances, it appears that they are practicing their profession and are subject to the license under Section 552, supra."

Evidently it was thought by the legislature advisable to amend Section 552 in order for the chemists working full time for the Southern Research Institute to be included within the exemption provided by Section 552. We consider that this shows that the legislature intended to provide that "each person engaged in the practice of medicine, chemistry, bacteriology, roentgenology, or similar professions," be covered by the statute whether they were working for some institution or corporation full time or whether they were engaged generally in the practice of such professions.

Moreover, the statute has this relevant provision in this connection:

"If such business is conducted as a firm or as a corporation in which more than one person is engaged, each person so engaged shall pay the license as above stated."

When the foregoing is considered together with the language of the statute itself the meaning of the statute is clear that it is to apply to all chemists who practice their profession (unless specifically exempted in the statute) regardless of whether it is done as a full time job with some institution or corporation or whether such chemists or other scientists covered thereby hold themselves out to the general public. Accordingly, we consider that it is the practicing of a profession that is the important thing to the statute and not who such chemist practices for. In the case of State v. Bay Towing & Dredging Company, 264 Ala. 187, 85 So.2d 890, this court said:

" ' " 'Courts can only learn what Legislature intended by what it has said, and have no right to stray into mazes of conjecture or search for an imaginary purpose, in construing statute' " ' "; and (3) the general rule where the language of the Statute is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction."

Upon consideration of the matter we think that the appellant is a chemist as the lower court held. We also think that the appellant also clearly practices his profession in being engaged as a chemist and as the chief chemist at that with Monsanto Chemical Company.

We have referred to the case of State v. Sellers, 30 Ala.App. 512, 9 So.2d 19, with certiorari denied by this court. In construing this same license statute it was held that a doctor who devotes his entire time to work in the United States Marine Hospital at Mobile and who does not hold himself out as a doctor to the general public and who does not take outside cases was practicing medicine as contemplated

by Section 552. In that case this court said:

"The practice of a profession and private practice are not synonymous. It requires no argument to demonstrate that the appellee was practicing medicine when he was doing general surgery in the United States Marine Hospital. Medicine was his profession. Therefore he was practicing his profession within the language of the statute."

In conclusion we think that the decree of the lower court should be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.